**UNITED STATES, Appellee**

**v.**

**Private E2 Paul E. SULLIVAN, Jr., 217–08–4495, United States Army, Appellant.**

**ACMR 9102737.**

U.S. Army Court of Military Review.

24 Nov. 1992.

For Appellant: Captain Clayton R. Diedrichs, JAGC (argued), Captain Robert L. Carey, JAGC, Captain Robin N. Swope, JAGC (on brief).

For Appellee: Captain Richard O.I. Brown, JAGC (argued), Colonel Dayton M.

Cramer, JAGC, Major Kenneth T. Grant, JAGC, Captain Donna L. Barlett, JAGC (on brief).

Before NAUGHTON, BAKER and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of violation of a lawful general regulation and three specifications of assault with a dangerous weapon in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1.

Although several issues were raised by appellate defense counsel, we will discuss only one: whether the government must prove beyond a reasonable doubt that a loaded pistol is fully functional in order to sustain a conviction for assault with a dangerous weapon. This specific issue has not been addressed directly by our Court or the Court of Military Appeals.

The appellant contends that he cannot be found guilty of an assault with a dangerous weapon because the government failed to prove that the weapon was functional at the time he pointed it at the victims. In the appellant's view, a pistol cannot be a dangerous weapon unless it is loaded and fully functional and therefore is capable of causing harm. We disagree.

### I.

The appellant resided in a barracks room with Private First Class [PFC] Lorenzo. One day while PFC Lorenzo was in the room with a friend, Specialist [SPC] Martinez, the appellant entered and complained about the smell of brewing coffee. To demonstrate his displeasure, the appellant went to his wall locker, withdrew a small case containing an unregistered automatic pistol, picked up the pistol, inserted a loaded magazine into the pistol, pulled the charging handle to the rear, and pointed the pistol at the side of PFC Lorenzo's head from a distance of twelve inches. PFC Lorenzo was frightened and tried to take cover between his bed and the floor. As he attempted to duck out of the way, the appellant had his finger on the trigger and followed every movement as he steadied the weapon with both hands.

SPC Martinez stood up while observing these events. The appellant then turned and pointed the weapon directly at his face from a distance of four feet while keeping his finger on the trigger. SPC Martinez gave the appellant a "hard look." The appellant then diverted his aim, withdrew the magazine, pulled the charging handle to the rear, and ejected a round from the chamber. He then disassembled the weapon, tossed the handle to PFC Lorenzo, and assured him that he really was not going to shoot either soldier. In spite of these assurances, PFC Lorenzo reported the incident to his military superiors. The appellant was apprehended and the pistol was seized from the room he and PFC Lorenzo occupied.

At trial, the government presented testimony about the incident and introduced the weapon into evidence as Prosecution Exhibit 1. The testimony of the witnesses indicated that at the time of the assault the pistol was new, that it was clean and well-maintained, that it had a round in the chamber, that a loaded magazine was inserted, and that the ejector mechanism worked properly. While all the evidence and testimony strongly suggested that the pistol was capable of functioning as designed, no direct testimony or other evidence was presented to prove that the pistol used in the assault was fully functional—i.e. that it had a firing pin and was capable of firing a projectile. Although the appellant did not claim at trial that the weapon was incapable of firing, we will not apply the waiver doctrine.

### II.

The resolution of the issue presented in this case is dependent upon the meaning of

the term "dangerous weapon" as used in Article 128(b)(1), UCMJ. That statute, in pertinent part, specifies that:

> (b) Any person subject to this chapter who—
>
> > (1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm ... is guilty of aggravated assault and shall be punished as a court-martial may direct.

It should be noted that the statute does not define the term "dangerous weapon."

■ The Manual for Courts–Martial, lists four elements[1] for the offense of assault with a dangerous weapon:

> (i) That the accused attempted to do, offered to do, or did bodily harm to a certain person;
>
> (ii) That the accused did so with a certain weapon, means, or force;
>
> (iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and
>
> (iv) That the weapon, means, or force was *used in a manner likely* to produce death or grievous bodily harm.

Manual for Courts–Martial, United States, 1984, para. 54b(4)(a) (emphasis added) [hereinafter Manual].

Paragraph 54c(4)(a)(i) of the Manual uses similar language in explaining that "[a] weapon is dangerous when *used in a manner likely* to produce death or grievous bodily harm." (Emphasis added).

There is some support for the appellant's contention that a pistol must be functional as well as loaded in order to be a "dangerous weapon" within the meaning of Article 128(b)(1), UCMJ. The Manual states, in pertinent part, that "an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon or a means or force likely to produce grievous bodily harm, whether or not the assailant knew it was unloaded." Paragraph 54c(4)(a)(ii). The appellant's argument, i.e. that the pistol must be functional as well as loaded to be a dangerous weapon, is a logical extension of this Manual provision.

The appellant's argument is also bolstered by the provisions of the Military Judges' Benchbook that provide:

> A (handgun) ... when used as a firearm and not as a club, may not be considered a dangerous weapon or a means likely to produce death or grievous bodily harm unless it is loaded.... A *functional* (clip) (magazine) fed weapon is a loaded weapon if there has been inserted into it a (clip) (magazine) containing a round of live ammunition, regardless of whether there is a round in the chamber.

Dep't of Army, Pam 27–9, Military Judges' Benchbook, para. 3–109, n. 6 (1 May 1982) (emphasis added) [hereinafter Benchbook].

Both the cited provisions of the Manual and the Benchbook are based on *Price v. United States,* 156 F. 950 (9th Cir.1907), and cases that followed *Price,* such as *United States v. Lamb,* 1 C.M.R. 440 (A.B.R.1951), and *United States v. Reid,* 42 C.M.R. 573 (A.C.M.R.1970). In our view, those cases no longer state the applicable law.

In *Price v. United States,* an unloaded pistol was pointed at the victim. The victim did not know whether the pistol was loaded or not, and responded in such fear that he "got under a table for safety." The court in *Price* stated that a dangerous weapon "is *one likely to produce* death or grievous bodily harm." *Price,* 156 F. at 952 (emphasis added) (citing *United States v. Williams,* 2 F. 61 (Org 1880)). The Court reversed the conviction because the unloaded weapon was incapable of inflicting harm.

Whatever validity *Price* and its progeny may have had at one time in the history of criminal law, the present law does not spec-

---

1. Although Paragraph 54b(4)(a) of the Manual also lists a fifth "element" when a loaded firearm is used in committing the offense, i.e. "(v) That the weapon was a loaded firearm," that provision relates only to the permissible maximum punishment. Appendix 12 of the Manual, in pertinent part, indicates that the maximum confinement for aggravated assault when committed "with a loaded firearm" is eight years, while "other cases" may be punished with up to three years of confinement. It is important to remember that these sentence enhancement provisions are not elements of the substantive offense as defined by Article 128(b), UCMJ.

ify that the weapon used be *one likely to produce* death or grievous bodily harm, but rather that the weapon be *used in a manner likely to produce* death or grievous bodily harm. The distinction is more than semantic. The former standard requires that the weapon be capable of producing death or grievous bodily harm, while the latter focuses on the manner of use. While the logical components of the former standard include a requirement that the gun be fully functional and loaded, the latter standard is broader, and includes likely reactions and responses to the threatening manner in which the weapon is used.

We are compelled to apply a definition of "dangerous weapon" that is consistent with current case law.[2] As a unanimous Supreme Court noted in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), an unloaded gun is a "dangerous weapon" because:

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills

fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.

476 U.S. at 17–18, 106 S.Ct. at 1678.

We are persuaded that this same rationale applies to an apparently functional pistol that is brandished in a threatening manner. Thus, we hold that the pistol in this case was a "dangerous weapon" within the meaning of Article 128(b)(1) regardless of whether it was loaded or functional.[3]

We have carefully considered the other assignments of error raised by the appellant, including one raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge NAUGHTON and Judge BAKER concur.

---

**2.** In a recent decision, the Court of Military Appeals in *United States v. Henry*, 35 M.J. 136 (C.M.A.1992), addressed the enhanced punishment provisions of the Manual that apply to robbery "when committed with a firearm." Rather than dealing with the sentence enhancement provisions of an assault "when committed with a loaded firearm," the case at bar focuses on the prerequisites that qualify a pistol as a "dangerous weapon."

**3.** In accordance with our holding today, the last sentence in paragraph 54c(4)(a)(ii) of the Manual and Note 6 of paragraph 3–109 of the Benchbook are no longer valid. Thus, a soldier may be convicted of aggravated assault for aiming a pistol at another person, whether or not the victim or perpetrator were aware of all the

circumstances. We note that the President's authority to prescribe rules under Article 36, UCMJ, 10 U.S.C. § 836, is limited to matters of procedure and evidence, and does not include the power to exclude from the definition of "dangerous weapon" those unloaded pistols used as a firearm. *See United States v. Dickson*, 49 C.M.R. 614 (A.C.M.R.1974). Generally, an offense is set forth in a statute, and the "elements" of the offense are identified by case law that interprets and applies the statute. While the Manual may summarize the elements of a particular offense as identified by case law, the President, in promulgating the Manual, does not create or define elements of an offense. *See United States v. Mance*, 26 M.J. 244, 252 (C.M.A. 1988).