**UNITED STATES, Appellee,**

v.

**Specialist Edwin RIVERA, 067–58–3473, United States Army, Appellant.**

**ACMR 9301723.**

U.S. Army Court of Military Review.

15 July 1994.

For Appellant: Major Fran W. Walterhouse, JAGC, Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Major James L. Pohl, JAGC; Colonel Dayton M. Cramer, JAGC, Captain Gregory T. Baldwin, JAGC.

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

RUSSELL, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of escape from custody, assault and battery, and aggravated assault in violation of Articles 95 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 895 and 928 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for nine months, and reduction to Private E1. The convening authority, pursuant to a pretrial agreement, reduced the confinement to eight months but otherwise approved the sentence.

In an opinion, dated 26 May 1994, we affirmed only so much of Specification 2 of Charge I as alleged a simple assault and set aside the sentence, permitting the same or a different convening authority to order a rehearing on sentence. The government filed a Motion for Reconsideration, pointing out that the military judge had taken adequate steps to protect the record, obviating the need for a rehearing on sentence. The appellant declined to submit a response. We agree with the government's observation and amend our decision accordingly.

The appellant, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), challenges the providence of his plea of guilty to aggravated assault and urges this court not to follow *United States v. Sullivan*, 36 M.J. 574 (A.C.M.R.1992), because, he asserts, an unloaded weapon is not "dangerous" as that term is used in Article 128(b)(1), UCMJ, contrary to the holding in *Sullivan*. We agree and find that the accused's plea of guilty to aggravated assault was improvident.

The appellant admitted during the providence inquiry and in a stipulation of fact that he pointed an unloaded pistol at two other soldiers, causing them to scramble in the belief that their lives were in danger. The military judge noted that the Manual for Courts–Martial provides that an unloaded weapon is not a dangerous weapon[1] but nonetheless said he would follow the decision of a panel of this court in *Sullivan*. He then advised the appellant that an unloaded pistol was dangerous, even though it was not used as a bludgeon. In reliance on that statement of law, the appellant pleaded guilty to a violation of Article 128(b)(1), UCMJ, assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm. However, the military judge correctly anticipated that the decision in *Sul-*

---

1. Manual for Courts–Martial, United States, 1984, Part IV, para. 54c(4)(a)(ii) [hereinafter MCM, 1984].

*livan* would likely not be followed on appeal and took appropriate preemptive action to protect the record. He obtained the appellant's assurance that he would have pleaded guilty even if the assault were treated at law as merely a simple assault. Moreover, he fashioned an appropriate sentence in this case based on the maximum sentence for a simple assault.

## I.

### A.

■ For a plea of guilty to be provident, the military judge must explain the elements of each offense to the accused, and inquire of the accused into the facts and circumstances surrounding the act charged in order to establish a factual basis for the finding that the accused is, in fact, guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

> Thus, if the specification alleges, within its four corners, all elements of the offense in question; if the accused pleads guilty to that specification; and if the inquiry of the accused indicates not only that the accused himself believes that he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea, then the plea may be accepted by the military judge as provident.

*United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980). However, if the accused sets up a matter which is inconsistent with a plea of guilty, then the plea must be rejected. UCMJ art. 45(a), 10 U.S.C. § 845(a); *see United States v. Shackelford*, 2 M.J. 17 (C.M.A.1976).

With this in mind, we proceed to consider whether the information revealed by the appellant during the *Care* inquiry established a sufficient factual basis to support the appellant's plea of guilty to the offense at issue. In light of the appellant's assertion of error, we are concerned with whether it was necessary for the inquiry of the appellant to establish that the appellant's pistol was loaded in order to provide a sufficient factual basis to support a finding of guilty to assault with a "dangerous" weapon, that is, a means likely to produce death or grievous bodily harm.

### B.

The pertinent common law test for whether a particular weapon is "dangerous" for purposes of establishing an assault with a dangerous weapon was first stated in the case of *United States v. Williams*, 2 F. 61 (C.C.D. Or.1880) (holding that a *loaded* pistol is a dangerous weapon as a matter of law). That court opined:

> Whether a particular weapon is a ... dangerous one is generally a question of law. Sometimes, owing to the equivocal character of the instrument—as a belaying pin— or the manner and circumstances of its use, the question becomes one of law and fact, to be determined by the jury under the direction of the court. But where it is practicable for the court to declare a particular weapon dangerous or not, it is its duty to do so. A dangerous weapon is one likely to produce death or great bodily injury.

*Id.* at 64.

The *Williams* test was restated and amplified in *Price v. United States*, 156 F. 950 (9th Cir.1907).

> The use of a dangerous weapon is what distinguishes the crime of an assault with a dangerous weapon from a simple assault. A dangerous weapon "is one likely to produce death or great bodily injury." *United States v. Williams* (C.C.) 2 Fed. [at] 64. Or perhaps it is more accurately described as a weapon which in the manner in which it is used or attempted to be used may endanger life or inflict great bodily harm. And it is perfectly clear that an unloaded pistol, when used in the manner shown by the evidence [2] in this case, is not, in fact, a dangerous weapon. If the defendant had struck or attempted to strike with it, the question whether it was or was not a dangerous weapon in the manner used, or

---

2. Mr. Price, while engaged in an angry altercation with the complaining witness, without justification, and within shooting distance, drew an unloaded revolver and pointed it toward the witness in a threatening manner, putting him in such fear that he got under a table for safety. The salient facts in this case are identical to those in *Price*.

attempted to be used, would be one of fact; but the courts quite uniformly hold as a matter of law that an unloaded pistol, when there is no attempt to use it otherwise than by pointing it in a threatening manner at another, is not a dangerous weapon.

*Id.* at 952 (footnote added).

Assault with a dangerous weapon was first expressly recognized in military law in General Order 70 issued on 23 September 1914. General Order 70 included the offense in an amendment to the table of maximum punishments as a crime not capital under Article of War 62, the precursor of our Article 134, UCMJ.[3] The *Price* definition of dangerous weapon was made an express part of service practice by the drafters of the 1917 Manual for Courts–Martial, who included it in their discussion of Article of War 93.[4] It remained an express part of military legal practice in military case law and the provisions of the Manuals for Courts–Martial promulgated through 1949. *United States v. Lamb*, 1 C.M.R. 440 (A.B.R.1951), *pet. denied*, 1 C.M.R. 100 (C.M.A.1952); *see* Manual for Courts–Martial, United States Army, 1921, Ninety-third Article of War, Section XIII (Assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing); Manual for Courts–Martial, United States Army, 1928, Ninety-third Article of War, para. 149m (Assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing); Manual for Courts–Martial, United States Army, 1949, Ninety-sixth Article of War [hereinafter MCM, 1949]. *See* MCM, 1949, Appendix 4, para. 124 (sample specification: assault with a dangerous weapon).

When Congress set out to create a uniform code of military justice, the drafters pro-posed a separate punitive article for aggravated assault that reflected military practice up to that time.[5] Following the formula in *Price* which had been promulgated in the 1949 Manual for Courts–Martial, they proscribed assaults "with a dangerous weapon or *other* means or force likely to produce death or grievous bodily harm" (emphasis added). This, the so-called "Morgan Draft" of Article 128(b)(1) of the Uniform Code, reflected the drafters' effort to standardize various service practices and prevailing common law. It was passed without revision. Thus, in 1951, Article 128 became the embodiment of the 1949 Manual for Courts–Martial and prevailing common law followed by the military and federal courts at the time it was enacted.

Since 1951, military appellate courts have consistently held that unloaded firearms and other neutralized weapons are not, as a matter of law, "dangerous" because they are not capable of producing death or grievous bodily harm. *See United States v. Cato*, 17 M.J. 1108 (A.C.M.R.), *pet. denied*, 19 M.J. 119 (C.M.A.1984); *United States v. Lamp*, 44 C.M.R. 504 (A.C.M.R.1971); *United States v. Reid*, 42 C.M.R. 573 (A.C.M.R.1970). The President, too, has promulgated the same principle. Manual for Courts–Martial, United States, 1951 para. 207b(1); Manual for Courts–Martial, United States, 1969 (Rev. ed.) para. 207c(1); Manual for Courts–Martial, United States, 1984, Part IV, para. 54c(4)(a)(ii).

## II.

We come now to *Sullivan*. Believing themselves bound by the Supreme Court's interpretation of "dangerous weapon" [6] within the meaning of the enhanced penalty provision of the federal bank robbery statute [7], our brethren opined for the first time in the

---

**3.** Article of War 62 was subsequently recodified as Article of War 96. This change is first apparent in the Manual for Courts–Martial, United States Army, 1917, Ninety-sixth Article of War, Section III [hereinafter MCM, 1917].

**4.** Assault with a dangerous weapon with the intent to commit a felony. MCM, 1917, Ninety-third Article of War, Section IX.

**5.** *See* Report of the Committee on a Uniform Code of Military Justice, Proposed Draft of Uni-form Code of Military Justice, *reprinted in* An Authoritative Index and Legislative History of the Uniform Code of Military Justice, 1950, at 1483 (United States Army Legal Services Agency 1985).

**6.** *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986).

**7.** 18 U.S.C. § 2113(d).

history of United States military jurisprudence that an unloaded firearm pointed at another in an assault was, as a matter of law, a means likely to cause death or grievous bodily harm. *Sullivan,* 36 M.J. at 577. We choose not to follow *Sullivan* for the following reasons.

### A.

Initially, we observe that the *Sullivan* panel's application of the Supreme Court's interpretation of the federal bank robbery statute to Article 128(b)(1), UCMJ, is dicta. Unlike the situation in this case, Private Sullivan placed a *loaded* pistol to the head of his victim. In addition, the unrebutted circumstantial evidence established beyond a reasonable doubt that the weapon was fully capable of firing. Finally, Private Sullivan did not claim that the weapon was incapable of firing. Accordingly, as there was no real doubt concerning the sufficiency of the evidence to establish Private Sullivan's guilt under the *Price* test, it was not necessary to discuss whether or not the government needed to prove that the gun was loaded or functional.

**8.** The *Beach* court noted that the federal penal statute for "obstructing" the mail, as interpreted by Federal courts, requires an element of unlawful purpose or intent. *See Fliashnick v. United States,* 223 F. 736 (2d Cir.1915); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). However, the court expressly rejected the applicability of that case law to offenses alleged under "one or the other of the first two clauses of Article 134 of the Code...." *Beach,* 7 C.M.R. at 49. They strongly asserted that such arguments were relevant only in cases alleging a violation of a federal penal statute not capital under the third clause of Article 134 (citing *United States v. Frantz,* 7 C.M.R. 37 (C.M.A.1953)).

**9.** In deciding *McLaughlin,* the Supreme Court relied on indications that Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as "dangerous" within the meaning of the statute, because by scaring victims, the robber thereby "creates" an immediate danger that a violent response will ensue. *McLaughlin,* 476 U.S. at 18, 106 S.Ct. at 1678. However, there is nothing in the historical development of Article 128 to suggest even remotely that it was intended to protect an assailant from retaliation, or to punish an assailant for the collateral consequences of his threat.

### B.

We also disagree with the *Sullivan* panel's assertion that the Supreme Court's interpretation of the enhanced penalty provision of the federal bank robbery statute should govern this court's interpretation of what constitutes aggravated assault under the Uniform Code of Military Justice. Military appellate courts need not apply civilian case law construing federal penal statutes to dissimilar offenses under military law. *See United States v. Beach,* 2 U.S.C.M.A. 172, 7 C.M.R. 48 (1953).[8] Thus, deference to civilian case law is not warranted here. The "dangerous weapon" element of aggravated assault under the Uniform Code is well-defined in the statute and clearly understood in terms of military common law. Moreover, the history,[9] purpose [10] and language [11] of the federal penal statute is substantially different than that for the military aggravated assault statute. Aside from the common use of the words "dangerous weapon," we see no legally significant similarity between the enhanced penalty provision considered in *McLaughlin* and the type of aggravated assault pro-

**10.** Article 128(b)(1) is an aggravated assault statute. Its purpose is to protect victims from the direct or threatened application of real force or violence sufficient to inflict actual death or grievous bodily harm. The federal bank robbery statute is intended to protect banks from larceny by force. The force required to make out robbery, like simple assault, requires only the threat of apparent force, enough to put the victim in reasonable fear of injury; the assailant does not need to intend to do harm, or to actually have the capability to do harm. In other words, the mere appearance of force, not its reality, is enough to make out robbery or simple assault.

Assault with a dangerous weapon under customary military law is very different from robbery and simple assault. The perpetrator must actually expose the victim to a real likelihood of death or serious bodily harm. Thus, harsher punishment is warranted and allowed by Article 128(b)(1), without regard to the precise means of force used to create such real likelihood of death or grievous bodily harm.

**11.** The federal bank robbery statute does not contain the defining language "or other means likely to produce death or grievous bodily harm." 18 U.S.C. § 2113(d).

scribed by Article 128(b)(1), UCMJ.[12] The *McLaughlin* court recognized the limited applicability of its holding by seeking to define dangerous weapon only "within the meaning of 18 U.S.C. § 2113(d)." 476 U.S. 16, 106 S.Ct. 1677. Moreover, the *McLaughlin* court did not intend to implicate military case law interpreting 10 U.S.C. § 928(b)(1).[13] Thus, our courts' traditional interpretation of "dangerous weapon," as that term is expressly defined in 10 U.S.C. § 928, remains intact: any means used in a manner likely to bring death or grievous bodily harm to the object of the assault.[14]

### C.

Applying the *McLaughlin* definition of "dangerous" to Article 128 is essentially a legislative act because it would operate to change a well-established element of the military offense of aggravated assault, thereby enhancing the punishment for simple assault committed with a firearm. In Article 128(b)(1), Congress has provided for enhanced punishment for only those assaults committed with a means or force "likely to produce death or grievous bodily harm."

The President has the power to provide for enhanced punishments for assaults committed with an unloaded firearm. UCMJ art. 36, 10 U.S.C. § 836; *see United States v. Henry*, 35 M.J. 136 (C.M.A.1992). The *Sullivan* panel has correctly pointed out that the President's power to provide for enhanced punishments does not carry with it the authority to create or to define elements of an offense; such are the respective sole prerogatives of the Congress and the judiciary. 36 M.J. at 577 n. 3. Likewise, our authority to identify and interpret the elements of an offense carries with it neither the power to

create elements nor to enhance punishment for offenses; such are the respective sole prerogatives of the President and Congress. Moreover, our power to construe statutes is limited in two ways: (1) we must follow the plain language of the statute, and (2) we are bound by precedent interpreting the same statute. *See generally Helvering v. Hallock*, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940).

### III.

In accordance with these precepts of judicial restraint, we must determine whether an unloaded firearm is "dangerous" within the plain meaning of Article 128. That matter was settled by this court in the *Reid* case, the first military case to consider whether an unloaded weapon was dangerous within the meaning of Article 128. 42 C.M.R. at 574. Following the principle of stare decisis, we are bound by that precedent insofar as it is correct in law and the facts are the same as in this case. Inasmuch as *Reid* interpreted the plain language of Article 128 defining dangerous weapon as a "means or force likely to produce death or grievous bodily harm" to the victim, we find no basis in law or fact to quibble with that holding. We agree that an unloaded pistol not used as a bludgeon is actually incapable of bringing death or grievous bodily harm to the person toward whom it is directed.

While we share our brothers' concern about the alarming increase in the use of firearms in the commission of crime, the truth is that an unloaded firearm is no more likely to bring death or grievous bodily harm to the person toward whom it is pointed today than it was in either 1880 or 1951.

---

12. The *McLaughlin* assessment of whether an unloaded firearm is "dangerous" may be pertinent, however, to our analysis of whether an unloaded pistol is a "firearm" for purposes of determining whether the punishment for robbery under the Code may be enhanced. *Cf. United States v. Henry*, 35 M.J. 136 (C.M.A.1992).

13. The Court granted certiorari solely to resolve an apparent conflict between the Second and Ninth Circuits concerning interpretation of the bank robbery statute. *McLaughlin*, 476 U.S. at 17 n. 2, 106 S.Ct. at 1678 n. 2. Thus, their opinion does not consider the legal issues unique

to the offense of aggravated assault in the military.

14. *See Cato*, 17 M.J. at 1110. The salient flaw in the *Sullivan* panel's reasoning lies in the implication that any means capable of communicating an apparent, albeit impotent, threat of death or serious bodily harm, is also a means "likely to produce death or grievous bodily harm" because a violent reaction may ensue. However, Article 128 proscribes assaults, not acts inciting others to self-defense.

■ Notwithstanding the *Sullivan* decision, we hold that the military judge erred as a matter of law when he informed the appellant during the providence inquiry that an unloaded pistol, used as a firearm and not as a bludgeon, was a "dangerous" weapon within the meaning of Article 128(b)(1). Accordingly, that portion of the appellant's plea of guilty to assault that included the use of a dangerous weapon was improvident. Fortunately, through his alert inquiry, the military judge made it clear on the record that neither the voluntariness of the appellant's plea nor the appropriateness of the adjudged sentence was affected. Thus, we hold that the error was not prejudicial to the appellant.

The court affirms only so much of the finding of guilty of Specification 2 of Charge I as finds that the appellant did, at Fort Bragg, North Carolina, on or about 21 August 1993, commit an assault on PFC Arthur Murray and PFC Nikola Lohja, by pointing an unloaded pistol at them in a threatening manner. The remaining findings of guilty are affirmed. The sentence is affirmed.

Senior Judge WERNER and Judge LANE concur.