**UNITED STATES**

v.

**Richard L. PALMER, 166–56–8252, Hospital Corpsman Third Class (E–4), U.S. Navy.**

**NMCM 94 01261.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 18 Feb. 1994.

Decided 22 Dec. 1994.

Maj R.K. Stutzel, USMC, Appellate Defense Counsel.

Maj A. Diaz, USMC, Appellate Government Counsel.

Capt Karen G. Dowling, USMCR, Appellate Government Counsel.

Before MOLLISON, CLARK and DeCICCO, JJ.

DeCICCO, Judge:

In this appeal, the appellant argues that his guilty plea to violating a provision of U.S. Navy Regulations by wrongfully possessing a dangerous weapon, a .25 caliber handgun, on a naval station was improvidently entered because the gun was unloaded and is therefore not a dangerous weapon. After examining the record of trial, the briefs of the parties, the regulation concerned and pertinent cases, we hold that an unloaded handgun is a dangerous weapon for purposes of alleged violations of U.S. Navy Regulations charged under Article 92, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 892. Therefore, we conclude that his guilty plea was not improvidently entered and affirm the findings and sentence.

The appellant pled guilty to numerous offenses involving drug possession and distribution, theft and disobedience.[1] Before this Court, the appellant raises two issues.[2] The first challenges the providence of his guilty plea to violating Article 1159 of U.S. Navy Regulations.

This provision states:

**1159. Possession of Weapons**

Except as may be necessary to the proper performance of his or her duty or as may be authorized by proper authority, no person in the naval service shall:

    a. have concealed about his or her person any dangerous weapon, instrument or device, or any highly explosive article or compound; or

    b. have in his or her possession any dangerous weapon, instrument or device or any highly explosive article or compound on board any ship, craft, aircraft, or in any vehicle of the naval service or within any base or other place under naval jurisdiction.[3]

The appellant correctly notes that the regulations do not define the term "dangerous

---

1. Specifically, the appellant, a hospital corpsman, pled guilty to five specifications involving distribution and possession with intent to distribute marijuana and morphine, theft of morphine from his ship, and violation of the regulation prohibiting the unauthorized possession of dangerous weapons aboard base in violation of Articles 112a, 121, and 92, UCMJ, 10 U.S.C. §§ 912a, 921, and 892. The military judge sentenced him to be confined for 9 years, to forfeit all pay and allowances, to be reduced to pay grade E–1 and to be discharged with a dishonorable discharge. The convening authority approved the sentence and suspended all confinement in excess of 36 months in accordance with the pretrial agreement.

2. I. AN UNLOADED HANDGUN IS NOT, AS A MATTER OF LAW, A DANGEROUS WEAPON UNDER ARTICLE 1159, U.S. NAVY REGULATIONS.

    II. THE COURT–MARTIAL WHICH HEARD THE CASE, CONVENED PURSUANT TO COURT–MARTIAL ORDER 51–93, LACKED JURISDICTION TO HEAR APPELLANT'S CASE, WHICH HAD BEEN REFERRED TO A COURT CONVENED BY COURT–MARTIAL ORDER 54–93. R.C.M. 601, M.C.M. 1984.

3. This provision of U.S. Navy Regulations (1990) is taken from earlier versions, namely Article 1136 of U.S. Navy Regulations (1973) and Article 1271 of U.S. Navy Regulations (1948) with only minor changes.

weapon" in either the article or the glossary. He further points out that, at least for the offense of assault with a means likely to produce death or grievous bodily harm under Article 128, UCMJ, ¶ 54c(4)(a)(ii) of the Manual for Courts–Martial, United States, 1984 [MCM], states:

> The use to which a certain kind of instrument is ordinarily put is irrelevant to the question of its method of employment in a particular case. Thus a bottle, beer glass, a rock, a bunk adaptor, a piece of pipe, a piece of wood, boiling water, drugs, or a rifle butt may be used in a manner likely to inflict death or grievous bodily harm. On the other hand, an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon or a means or force likely to produce grievous bodily harm, whether or not the assailant knew it was unloaded.

The appellant takes the last sentence quoted above and attempts to apply it to his case where naval station security personnel searched the appellant's vehicle located on base and found in the trunk both a loaded .38 caliber handgun and an unloaded .25 caliber handgun. The appellant alleges that his guilty plea was improvident as to the latter weapon.

The Army Court of Military Review has ruled both ways on the question of whether an unloaded firearm is a dangerous weapon within the meaning of Article 128, UCMJ. *United States v. Rivera*, 40 M.J. 544 (A.C.M.R.1994); *United States v. Sullivan*, 36 M.J. 574 (A.C.M.R.1992). On the other hand, both this Court and the Army Court have found unloaded guns to be dangerous weapons with respect to a charge of carrying a concealed weapon under Article 134, UCMJ. *United States v. Booker*, 37 M.J. 1114 (N.M.C.M.R.), *certificate for review filed*, 39 M.J. 35 (C.M.A.1993); *United States v. Smith*, 36 M.J. 838 (A.C.M.R.1993). Both *Booker* and *Smith* relied on the MCM definition of "dangerous weapon" contained in ¶ 112c(2) relating to the offense of carrying a concealed weapon: "For purposes of this paragraph, a weapon is dangerous if it was specifically designed for the purpose of doing grievous bodily harm, or it was used or intended to be used by the accused to do grievous bodily harm."

In the case at bar, we are not confronted with an offense involving the use of an instrument or a weapon, but the gist of the offense, as in the case of carrying a concealed weapon, consists merely in the possession of the weapon. Thus, in an assault case, the proper focus is on the use of the instrument or weapon, and even items not normally considered "weapons" can become weapons based on the manner of their use. The purpose or the design of the instrument is not determinative. In contrast, in cases where only possession of the instrument or weapon is involved, the proper focus cannot be on the use because there is no use, but rather on the nature of the item, its design and its intended purpose. Therefore, the appellant's attempt to graft onto his case the sentence in ¶ 54c(4)(a)(ii), MCM, fails because it concerns the use of instruments or weapons in an assault.

The United States Supreme Court, in considering the definition of dangerous weapon in the context of a federal statute,[4] has stated:

> [A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.

*McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). We believe that such a definition of "dangerous" is applicable to cases involving a violation of departmental regulations prohibiting the unauthorized possession of dangerous weapons on base. Therefore, we conclude that a charge of violating Article 1159 of U.S. Navy Regulations by wrongfully possessing an unloaded handgun aboard a naval station involves a definition of dangerous

4. 18 U.S.C. § 2113(d).

weapon similar to that used for the offense of carrying a concealed weapon. That is, we will look to its purpose or design. *See United States v. Bussard,* 31 C.M.R. 448, 1961 WL 4604 (N.B.R.1961); *United States v. Fanning,* 25 C.M.R. 717, 1957 WL 4662 (N.B.R.1957). We presume that all guns, whether loaded or not, are dangerous weapons in cases involving alleged violations of Article 1159 of U.S. Navy Regulations.

Also, this interpretation will support the obvious intent behind the Secretary's prohibition. The interests of good order and discipline aboard naval vessels, aircraft, vehicles and installations require that the unauthorized possession of dangerous weapons be prohibited. This necessarily includes the unauthorized possession of unloaded handguns because they are able to be quickly and easily loaded and are designed to be fired. They are designed for no other purpose.

■ In light of the above, the appellant's admission on the record that the unloaded handgun was a dangerous weapon was appropriate. Record at 22. He admitted all of the elements of the offense, and we find no substantial basis to reject his guilty plea. *United States v. Vega,* 39 M.J. 79 (C.M.A.

1994); *United States v. Prater,* 32 M.J. 433 (C.M.A.1991).

■ The second assignment of error also lacks merit. The notation in the referral block to convening order "54–93" instead of convening order "51–93" was obviously only a scrivener's error. The appellant did not object to this error at trial and it was therefore waived. Rule for Courts–Martial 905(b) and (e). Such an error in the referral of the charges is not jurisdictional in nature. *United States v. King,* 28 M.J. 397 (C.M.A.1989). It also did not prejudice the substantial rights of the appellant. Article 59(a), UCMJ.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge MOLLISON and Judge CLARK concur.