UNITED STATES, Appellee,

v.

Specialist Ketema K. TURNER,
255–23–5026, United States
Army, Appellant.

ARMY 9302185.

U.S. Army Court of Criminal Appeals.

8 June 1995.

For Appellant: Captain Don F. Pollack, JAGC (argued); Colonel Stephen D. Smith, JAGC, Major Roy H. Hewitt, JAGC (on brief).

For Appellee: Captain John W. O'Brien, JAGC (argued); Colonel John M. Smith, JAGC, Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel James L. Pohl, JAGC, Major Kenneth T. Grant, JAGC, Captain Jane F. Polcen, JAGC (on brief).

Before the Court sitting En Banc.

## OPINION OF THE COURT

RUSSELL, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of transporting a loaded firearm and aggravated assault (two specifications) in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1.

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have reviewed the record of trial, the errors assigned by the appellant, the government's reply thereto, and the oral arguments and briefs of the parties submitted in response to the two issues specified by this court:

I. WHETHER AS A MATTER OF LAW, AN UNLOADED PISTOL BRANDISHED AS A FIREARM AND NOT AS A BLUDGEON, IS A "DANGEROUS WEAPON OR OTHER MEANS OR FORCE LIKELY TO PRODUCE DEATH OR GRIEVOUS BODILY HARM" WITHIN THE MEANING OF ARTICLE 128, UCMJ.

II. IF THE ANSWER TO SPECIFIED ISSUE I IS NO, MAY THE COURT NEVERTHELESS AFFIRM THE FINDINGS OF GUILTY TO AGGRAVATED ASSAULT BY APPLYING *UNITED STATES V. SULLIVAN*, 36 M.J. 574 (A.C.M.R.1992) AS THE CONTROLLING LAW WHEN THE PLEA WAS ENTERED.

This court, on its own motion, decided to consider the case en banc in order to resolve two conflicting panel decisions from this court.[1] Both the government and the appellant, by brief and in oral argument, have urged that the answer to both specified issues is "no." Both the government and the appellant urge us to affirm the findings of guilty to simple assault. We agree and hold that the accused's plea to aggravated assault was improvident.

### I. Facts

Following a traffic altercation with two women in another car, the appellant exited his vehicle and pointed an unloaded pistol at them at close range. Ammunition for the pistol was in the appellant's car. The two women became very fearful because they believed that the pistol was loaded and that death or grievous bodily harm was imminent.

Prior to trial, the appellant stipulated as fact that the weapon was unloaded at the time of the assault and agreed to plead guilty to two specifications of assault with a dangerous weapon in violation of Article 128(b)(1), UCMJ. At trial, the military judge followed *Sullivan* and advised the appellant that a pistol used as a firearm was a dangerous weapon as a matter of law, whether or not it was loaded. In reliance on this advice, the appellant agreed that an unloaded pistol used as a firearm was a "dangerous weapon" in fact. The military judge then accepted his guilty plea and punished him within the maximum sentence authorized under Article

---

1. In *United States v. Sullivan*, 36 M.J. 574 (A.C.M.R.1992), a panel of this court held that an unloaded pistol is a dangerous weapon as a matter of law. And, most recently, in *United States v. Rivera*, 40 M.J. 544 (A.C.M.R.1994), *pet. denied*, 42 M.J. 12 (1994), a panel of this court held that an unloaded pistol, not used as a bludgeon or missile, is *not* a dangerous weapon as a matter of law.

128(b)(1), UCMJ, assault with a dangerous weapon.

## II. Law

■ A "dangerous weapon" for purposes of Article 128(b)(1), UCMJ, is a weapon that has the inherent present capability of inflicting death or grievous bodily harm. An unloaded pistol, when presented as a firearm, is not a "dangerous weapon" for purposes of Article 128(b)(1), UCMJ. *United States v. Smith*, 4 U.S.C.M.A. 41, 15 C.M.R. 41 (1954) (citing *Price v. United States*, 156 F. 950 (9th Cir.1907);[2] Manual for Courts–Martial, United States, 1984, Part IV, para. 54c(4)(a)(ii) [hereinafter MCM, 1984]. This is so because under no conceivable circumstances is an unloaded pistol capable of inflicting any bodily harm, unless it is used as a missile or a bludgeon. *Smith*, 15 C.M.R. at 47. Thus, as a matter of law and in accordance with legal precedent, an unloaded pistol presented as a firearm is not a dangerous weapon and is not being used in a manner "likely" to produce death or grievous bodily harm as contemplated by Article 128(b)(1). *United States v. Rivera*, 40 M.J. 544 (A.C.M.R.1994), *pet. denied*, 42 M.J. 12 (1994).

## III. Decision

■ We now hold that it was error as a matter of law to have informed the appellant during the providence inquiry that an unloaded pistol, used only as a firearm, was a dangerous weapon likely to produce death or

2. The January 1995 issue of *The Army Lawyer* contains a well-researched casenote on this issue. *See* Criminal Law Notes, *Dangerous Weapons, Unloaded Firearms, and the Law of Aggravated Assault: The ACMR Hangfires in Two Conflicting Opinions*, ARMY LAW., Jan. 1995, at 56.

3. The military judge was relying on the law as it apparently existed in *Sullivan*. This court's opinion in *Sullivan*, to the extent that it is inconsistent with *Smith* and this opinion, is overruled.

4. We are satisfied that the appellant's pleas to aggravated assault are unsupported because the relevant facts establish there was no round in the chamber of the pistol, the loaded magazine had been removed from the pistol, and ammunition for the pistol was not immediately at hand. *See United States v. Cato*, 17 M.J. 1108 (A.C.M.R. 1984) (cartridge jammed backwards in the breach is a loaded weapon); *United States v.*

grievous bodily harm within the meaning of Article 128(b)(1), UCMJ.[3] Moreover, in light of the law applicable to guilty pleas, that portion of the appellant's plea in which he admits to two assaults with a "dangerous weapon" is not provident because it is unsupported by any evidence that the unloaded pistol was used in a manner likely to produce death or grievous bodily harm.[4] *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

## IV. *Sullivan* Revisited

We are satisfied that this court should not follow *Sullivan* because it holds that an unloaded pistol used as a firearm is a dangerous weapon under Article 128(b)(1), UCMJ. However, we are equally convinced that the policy concerns voiced in *Sullivan* are, indeed, meritorious.

The President has set the maximum punishment for what the law recognizes as a simple assault in violation of Article 128(a).[5] Since then, the prevalence of gratuitous violence with firearms has greatly increased. However, the President has not provided for an enhanced punishment for simple assaults committed when an *apparently* dangerous weapon, such as an unloaded pistol, is used. The President may do so by incorporating the broad view expressed in *Sullivan* into the framework of maximum punishments for simple assaults.[6] *See McLaughlin v. United*

*Lamp*, 44 C.M.R. 504 (A.C.M.R.1971) (functional carbine with live ammunition in magazine, but no round chambered, is a loaded weapon). Accordingly, the pistol was never actually capable of inflicting death or grievous harm in the manner of its design at the moment the simple assaults were consummated. *See United States v. Smith*, 4 U.S.C.M.A. 41, 15 C.M.R. 41 (1954).

5. Confinement for three months and forfeiture of two-thirds pay per month for three months. MCM, 1984, para. 54e(1).

6. The likelihood that serious bodily injury will be produced by a response to the pointing of an unloaded pistol is arguably a more attenuated and qualitatively different danger than the likelihood of serious injury being inflicted by pointing a loaded pistol. However, both dangers are proximate and real, and both warrant special punishment consideration.

*States,* 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986).

Accordingly, we strongly urge The Judge Advocate General of the Army to join his counterparts from the other uniformed services in recommending that the President make such a change. Thus, sentencing authorities could fashion an appropriate punishment when an unloaded pistol or other apparently dangerous weapon is used to produce either fear of grievous bodily harm or a truly dangerous response that is likely to produce actual death or serious harm to innocent bystanders.[7]

The appellant's remaining assertions of error are without merit.

The court affirms only so much of the findings of guilty of Specifications 1 and 2, respectively, of Charge II as find that the appellant did, at or near Fort Wainwright, Alaska, on or about 31 July 1993, commit assaults on [the two victims named in those specifications], by pointing an unloaded pistol at each of them in a threatening manner. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to Private E1.

Acting Chief Judge EDWARDS, Senior Judge GRAVELLE, Senior Judge CAIRNS, and Judge GONZALES concur.

JOHNSTON, Judge, concurring in part and dissenting in part.

That portion of the majority opinion concerning the assaults in this case has at least four flaws. The first and perhaps the most serious flaw in the majority approach is that it leads to bizarre results. For example, if an accused approached his victim with an unloaded pistol concealed in his pocket, he could subject himself to a felony conviction and the maximum punishment of a bad-conduct discharge and confinement for one year for carrying a concealed dangerous weapon.[1] If an accused approached the same victim with an unloaded pistol and pointed it as if to fire, the result under the majority approach would be a conviction for simple assault with a maximum punishment of confinement for only three months and no punitive discharge.

Even though logic and experience indicate that brandishing a weapon as if to shoot is more serious and blameworthy criminal conduct than carrying it concealed, the majority approach treats the former as a minor offense.[2] Every soldier learns from basic training onward to treat firearms as dangerous weapons whether they are loaded or not. If the majority view is correct, however, an unloaded rifle or pistol is "dangerous" for virtually all purposes in the military except when it is proffered as a firearm during an offer-battery type assault!

A second flaw is the failure to reconcile the majority holding with the plain language of Article 128(b), UCMJ. The statutory prohibition concerning assault with a "dangerous weapon or other means or force likely to produce death or grievous bodily harm" is not limited by its plain meaning to those loaded firearms immediately and directly capable of inflicting such harm. In addition, there is no indication in the legislative history that only a loaded weapon can be a "dan-

---

**7.** During oral argument, government counsel informed the court that representatives of the uniformed services are currently considering a proposal that the President increase the maximum punishment for simple assaults with an unloaded pistol or other apparently deadly weapons.

**1.** Paragraph 112c(2) of the Manual, in defining a "dangerous weapon" for purposes of the offense of carrying a concealed weapon, states:

[A] weapon is dangerous if it was specifically designed for the purpose of doing grievous bodily harm, or it was used or intended to be used by the accused to do bodily harm.

*See also United States v. Palmer,* 41 M.J. 747 (N.M.Ct.Crim.App.1994) (unloaded pistol is a dangerous weapon for purposes of lawful regulation prohibiting unauthorized possession of dangerous weapon on base).

**2.** An adjustment to the table of maximum punishments for an "assault with an apparently dangerous weapon" solves only part of the problem. The appellant's conduct in this case was materially different from, and much more egregious and blameworthy than that found in a simple offer-battery assault (for example, a hand raised as if to strike).

gerous weapon or other means or force likely to produce death or grievous bodily harm." [3]

A third and closely related flaw in the majority approach is that it perpetuates the misconception in paragraph 54c(4)(a)(ii) of the Manual that an unloaded pistol, when brandished as a firearm, can never be the "dangerous weapon or other means or force" used in a manner likely to produce death or grievous bodily harm in violation of Article 128(b)(1), UCMJ.[4] This dogmatic approach ignores the facts and circumstances surrounding the use of the pistol.

While professing to follow *United States v. Smith*, 4 U.S.C.M.A. 41, 15 C.M.R. 41 (1954),[5] the majority opinion fails to apply the rationale of that opinion to the case at bar. The five-inch knife used by the assailant in *Smith* never came closer than nine yards to the victim. In a sense, the knife was "unloaded" as the assailant never came within immediate thrusting distance—he merely had the potential of slashing the victim. The Court of Military Appeals in *Smith*, however, did not focus solely on the characteristics of the knife or its maximum effective range. Instead, the court examined all the circumstances to conclude that the assailant had the actual ability to inflict death or grievous bodily harm before the victim could escape.

In the case at bar, a careful review of the stipulation of fact (see Appendix) indicates that the appellant had three loaded magazines and a box of ammunition *within arm's reach* as he pointed his weapon at the first

victim. The majority concludes that an aggravated assault was not committed because none of those bullets were in the pistol. The majority focuses too much on the implement and not enough on the actor and the circumstances surrounding the manner in which the implement was used.

In redefining "dangerous weapon" the majority approach creates a new "inherent present capability" element that is different from the "present ability" standard previously utilized by this court. In *United States v. Cato*, 17 M.J. 1108 (A.C.M.R.1984), *pet. denied*, 19 M.J. 119 (C.M.A.1984), this court affirmed a guilty plea to aggravated assault even though the round of ammunition was jammed backwards into the breach of the weapon. In that case, the rifle could not have been fired until the jammed round of ammunition was manipulated by hand and inserted correctly. In *United States v. Lamp*, 44 C.M.R. 504 (A.C.M.R.1971), we affirmed an aggravated assault conviction when the loaded magazine was inserted into the carbine but no round was in the chamber. Query—how are those situations materially different from having ammunition or magazines within easy reach? Is not the issue under the *Smith* analysis whether the assailant had the present ability to inflict death or grievous bodily harm during the offer-battery assaults even though the pistol was "unloaded"?

A fourth flaw in the majority approach is their failure to analyze this case in accordance with the standard of review for guilty

---

3. Recently a man armed with an unloaded pistol scaled a fence and entered the White House grounds. While struggling over the gun, both he and a secret service officer were wounded by another agent. Assuming that the intruder was a soldier who aimed his unloaded pistol at the agent, query: was the weapon used in a manner likely to produce death or grievous bodily harm when it provoked a foreseeable, deadly response?

4. It should be noted that the Manual provision interpreting Article 128 relied upon *Price v. United States*, 156 F. 950 (9th Cir.1907). The *Price* approach makes perfectly good sense when applied to specific intent assault statutes such as Article of War 93 ("assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing") or 18 U.S.C. § 113(c) ("assault with a dangerous weapon, with intent to do bodily harm"), as the knowing use of an

unloaded firearm during an assault negates the specific intent element of those crimes. That rationale, however, is misleading when applied to Article 128(b)(1), a statute that has no specific intent component.

5. Although the majority opinion treats *Smith* as controlling in this offer-battery aggravated assault scenario, a close reading of that case reveals that it actually involved an attempted-battery aggravated assault. *See United States v. Anzalone*, 41 M.J. 142 (C.M.A.1994). The assailant in *Smith* uttered an obscene threat and advanced menacingly, knife in hand, toward his fleeing victim. He stopped only when ordered to halt by an intervening officer. Thus, the comments in *Smith* relied upon by the majority concerning an unloaded pistol are mere dicta in the context of that case.

pleas. In this case the providence inquiry contained the appellant's admission of each element and his revelation of factual circumstances that objectively supported his plea. *See United States v. Anzalone*, 41 M.J. 142 (C.M.A.1994); *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980).

At trial the appellant initially entered guilty pleas to two specifications that each alleged an offer-type assault upon a person "with a dangerous weapon, to wit: a loaded firearm." The government then moved to amend the specifications to allege that the assaults occurred "with a dangerous weapon, to wit: a firearm." The military judge permitted the specifications to be amended, and the appellant reentered pleas of guilty. The military judge then stated, "I don't think this alleges an aggravated assault when you take out the loaded firearm aspect of the case." Both the trial and defense counsel, however, cited *Sullivan* to support their understanding that a firearm may be a dangerous weapon even though it is unloaded.

During the colloquy with the appellant, the military judge emphasized the point as follows:

MJ: Now, is a .9mm Berretta the sort of weapon which is likely to cause grievous bodily harm?

ACC: Yes, sir, it is.

MJ: Do you remember how I defined the term?

ACC: Yes, sir.

MJ: Even though this was an unloaded weapon do you understand that it is still something, or you believe that it is something that might cause grievous bodily harm?

ACC: Yes, sir.

MJ: At least when used in the manner that you were using it?

ACC: Yes, sir.

It is clear from the record that the appellant and his counsel knew and understood that the guilty plea to aggravated assault was based on an assault by offer involving an apparently loaded pistol under circumstances where the pistol could have been loaded. Thus, the plea inquiry did not contain "evidence in substantial conflict with" his plea of guilty in connection with his intent so as to warrant setting aside his plea. *See United States v. Stewart*, 29 M.J. 92, 93 (C.M.A.1989) (citing *United States v. Hebert*, 1 M.J. 84, 86 (C.M.A.1975)).

All the parties at the court-martial applied the binding precedents of our court, including *United States v. Sullivan*, 36 M.J. 574 (A.C.M.R.1992), at the time the plea was entered. The majority opinion finds the plea improvident because the parties at trial focused on the *Sullivan* approach to the issue. Even if that reliance was misplaced, however, the appellant supplied facts during the colloquy and in the stipulation that would be adequate to uphold the plea under the pre-*Sullivan* standards. The majority seems to have forgotten that a guilty plea supported by a pretrial agreement may be upheld even though the parties at trial discuss the wrong theory of law or even the wrong Article of the UCMJ. *See United States v. Hubbard*, 28 M.J. 203 (C.M.A.1989); *United States v. Epps*, 25 M.J. 319 (C.M.A.1987); *United States v. Felty*, 12 M.J. 438 (C.M.A.1982).

Rather than perpetuating the flaws of the majority opinion, a better approach would be to interpret Article 128(b), UCMJ, in accordance with the reasoning of a unanimous Supreme Court in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986). In that case the Court concluded that an unloaded gun always is a "dangerous weapon."

[A] gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and *the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place.* In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.

*Id.* at 17–18, 106 S.Ct. at 1677 (emphasis added). Updating the considerations enunciated by the Court of Military Appeals in *United States v. Vigil*, 3 U.S.C.M.A. 474, 13 C.M.R. 30 (1953), in accordance with the reasoning of the Supreme Court in

*McLaughlin* results in the following analysis for an offer-battery assault committed with an apparently "dangerous weapon":

a. What is the typical and characteristic nature of the weapon used, including the use for which it is manufactured and sold?

b. Was the weapon used in a manner likely to produce death or grievous bodily harm either directly or through the immediate danger of a violent response or hasty retreat?

Utilizing this standard, I would find the appellant's plea provident as he intended that the victim perceive the imminent infliction of death or grievous bodily harm from the pistol. I would further find that his actions in pointing the Berretta at the mid-section of his victims and threatening one of them, "I oughta shoot you bitch," created the very real possibility of a violent intervention or response or hasty evasion likely to produce death or grievous bodily harm. Thus, this court should hold that the appellant's actions were aggravated assaults within the meaning of Article 128, UCMJ, for offer-battery assault, whether or not the pistol was loaded.

MOGRIDGE, Judge, dissenting.

I join Judge Johnston in his dissent. The majority applies conflicting standards in an offer-type aggravated assault. They correctly apply a subjective, apparent ability standard, as seen through the victim's eyes, when determining whether an assault was committed by the appellant. However, when determining whether the assault was aggravated, they change to an objective present ability standard to test the dangerousness of the weapon. This dual standard was rejected as "much too naive ... it cannot be approved" by the very case they cite as support for their position. *United States v. Smith*, 4 U.S.C.M.A. 41, 48, 15 C.M.R. 41, 48 (1954). This position also requires a further illogical step. They must then adopt a peculiar definition for a dangerous weapon that is contrary to common sense and common understanding and different than is used in any other situation in the military. We are taught from the first day of active duty that guns are dangerous.

Paragraph 54c(4)(a)(ii) of the current Manual for Courts–Martial specifically forbids a finding of aggravated assault with an unloaded pistol because it is incapable of inflicting death or grievous bodily harm. Although the conflicting and archaic Manual language is a nonbinding comment on the law, it is contrary to logic and should be eliminated by proper authority to avoid confusion. In *Smith*, the Court of Military Appeals recognized the illogical reasoning imposed by the Manual. "As a matter of sheer logic, it may be said to follow that, if we are to view the question of bare assault through the eyes of the victim, so also should we measure that of aggravation. However, the Manual has departed from the method of logic in at least two instances." *Smith*, 15 C.M.R. at 47.

In my opinion, absent the Manual provision, the *Smith* court would have followed the logical extension of apparent ability reasoning in determining aggravation in the offer-type assault. They indicated as much when the court stated: "Although the Manual has elected to follow the subjective thinking of 'apparent ability' in the area of simple assault, it has not done so in that of aggravation. There it has adopted the objective approach of 'present ability.' *Ours not to reason why.*" *Id.* at 48 (emphasis added).

In an offer-type aggravated assault, the accused's apparent ability to inflict death or grievous bodily harm and the victim's fear thereof is always viewed from the victim's perspective. But that fear must be a reasonable one. Thus if, as in this case, the victims reasonably feared death or grievously bodily harm was about to be inflicted upon them by the accused's unlawful means or force, then an aggravated assault has been committed, regardless of the accused's present ability or intent to inflict death or such injury. The fact finder decides whether the victim reasonably feared death or serious bodily injury.

Whether the weapon apparently is dangerous or used in a manner likely to result in death or grievous bodily harm are issues to be decided by the fact finder as part of the reasonableness of the victim's fear and the intent of the accused. Thus, if the aimed pistol is such a distance from the victim that it clearly could not injure, the reasonable

man would not be afraid. If an accused inadvertently instills fear, he has no wrongful intent, hence, no aggravated assault. But, if one wrongfully seeks to instill fear of death or grievous bodily harm in another, and uses a means or force apparently capable of inflicting death or such injury and the victim reasonably so fears, then an aggravated assault has been inflicted.

In the case at bar, because of a perceived traffic insult, the appellant pointed a real, fully functioning, recently unloaded pistol at the midsection of the victim and said, "I oughta shoot you bitch." The victim hysterically ran from the appellant due to real and reasonable fear that death or grievous bodily harm was likely to be inflicted at the appellant's whim. The appellant accomplished exactly what he intended: that is, he wanted his victim to fear death or grievous bodily harm as a lesson to anyone daring to cross him. The possible foreseeable consequences of his act including armed response, armed intervention, and injury by hasty retreat, are limited only by one's imagination. The appellant intended this to be more than a simple assault. The appellant pleaded guilty to and was found guilty of aggravated assault. I would affirm that finding.

Chief Judge CUTHBERT was present for oral argument, but did not participate in the decision of this case due to reassignment.

### APPENDIX

### PROSECUTION EXHIBIT 1
### FOR IDENTIFICATION

FORT WAINWRIGHT, ALASKA

UNITED STATES

v.

TURNER, KETEMA K., Specialist

255–23–5026
B Company, 6th Engineer Battalion,
6th Infantry Division (Light),
Ft. Wainwright, AK

### STIPULATION OF FACT

It is hereby stipulated by and between the Prosecution and Defense, with the express consent of the accused that the following facts are true, accurate and susceptible of proof:

The accused is assigned to B Company, 6th Engineer Battalion, 6th Infantry Division (Light), Ft. Wainwright, Alaska. The accused entered active duty on 26 November 1990 and has remained continuously on active duty since that date.

On 30 July 1993, the accused purchased a 9mm Beretta semi-automatic handgun from the sports store at Fort Wainwright, Alaska. During the early morning hours of 31 July 1993, at approximately 0100 hours the accused was travelling in a red Mazda pickup driven by SPC Brian Victor. SPC Victor and the accused were both carrying their 9mm handguns in the vehicle with them. They had just left the Fort Wainwright installation and turned south on Cushman Street when a Ford Escort driven by Dana Kelley was following behind the accused. Dana Kelley and her passenger, Mary Williams, attempted to pass SPC Victor as he was driving unusually slow, however, SPC Victor sped up not allowing the two girls to pass. After both the vehicles turned right on to 27th Avenue, Dana Kelley and Mary Williams passed SPC Victor's vehicle and proceeded to their apartment.

The accused and SPC Victor followed Dana Kelley, 18 years old, and Mary Williams, 20 years old, to their apartment and pulled up along side of them as they were getting out of their car. The accused grabbed his 9mm handgun and jumped out of the pickup confronting Dana Kelley with the handgun. The accused yelled words at Dana Kelley and cocked the handgun. He pointed the handgun at her midsection, frightening Ms. Kelley and causing her to run terrified into the apartment. Once in the apartment she had her roommate call the police. The accused then proceeded around the front of the Ford Escort and confronted Mary Williams, stating to Ms. Williams, "I oughta shoot you bitch", and pointing the handgun at her.

The accused then got back into the vehicle and left. Fairbanks police officer, Daniel Hoffman responded to the call and identified the red Mazda pickup travelling on 23rd Avenue. He stopped the vehicle and waited for additional police support to arrive. SPC

Victor and the accused were both arrested and identified by Dana Kelley and Mary Williams. Officer Hoffman found one 9mm semi-automatic handgun under the passenger seat, one 9mm semi-automatic handgun behind the passenger seat, and three fully loaded 9mm magazines and one box of 9mm ammunition in the glove box. The handguns were unloaded prior to the confrontation with Ms. Kelley and Ms. Williams, reloaded afterwards, and unloaded again prior to the stop and arrest of SPC Victor and the accused.

Green Tab Memorandum Number 7, Privately Owned Weapons and Ammunition, dated 28 August 1992, states that while being transported in vehicles, weapons will be in a weapons case and will remain outside the immediate reach of any occupant of the vehicle. It also states that privately owned weapons will not be transported while loaded. The accused had a duty to obey Green Tab Memorandum Number 7 and failed to do so.

The accused has no legal justification for his actions and was at all times mentally responsible for his actions.

[Signature]

CPT Tyler J. Harder
Trial Counsel

[Signature]

CPT Stephen K. Thomas
Defense Counsel

[Signature]

SPC Ketema Turner
Accused