**UNITED STATES**

v.

**Lashawn BOOKER, 354–64–3190
Fireman Apprentice (E–2),
U.S. Navy.**

**NMCM 92 00171.**

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 26 July 1991.

Decided 31 Aug. 1993.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LCDR Stephen H. Johnson, JAGC, USNR, Appellate Defense Counsel.

Capt Brett D. Barkey, USMCR, Appellate Government Counsel.

Before ORR, MOLLISON and BARNES, Judges.

PER CURIAM:

In accordance with his pleas, the appellant was found guilty of assaulting a petty officer and carrying a concealed weapon in violation, respectively, of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928, 934. He was sentenced by the military judge, sitting alone, to confinement for 2 months, forfeiture of $250.00 pay per month for 4 months, reduction to pay grade E–1, and a bad-conduct discharge. Before this Court, the appellant assigns four errors [1] in the conduct of his

1. I. APPELLANT'S PLEAS TO CHARGE II AND ITS SPECIFICATION, CARRYING A CONCEALED WEAPON, ARE NOT PROVIDENT WHEN THE PROVIDENCE INQUIRY REVEALS THAT THE WEAPON WAS LOCATED IN THE LOCKED GLOVE COMPARTMENT OF THE VEHICLE THAT APPELLANT WAS DRIVING.

II. THE STAFF JUDGE ADVOCATE'S RECOMMENDATION, REGARDING THE EFFECT OF THE PRETRIAL AGREEMENT NEGOTIATED IN APPELLANT'S CASE, WAS MATERIALLY ERRONEOUS AND MISLED THE CONVEN-ING AUTHORITY INTO SUSPENDING CONFINEMENT IN EXCESS OF 75 DAYS WHEN ONLY TWO MONTHS CONFINEMENT WAS ADJUDGED. [CITATIONS OMITTED.]

III. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. [CITATION OMITTED.] BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIV-

trial. We have concluded, however, that all of those assigned errors are without merit.

■ Although the appellant admitted at trial, Record at 19, that an unloaded[2] .38 caliber pistol he had in the glove compartment of his car was within his "immediate reach" while he was on board the Oakland Army Base, he now asserts in his first assignment of error that, as a matter of law, the pistol could not have been in his immediate reach. During the sentencing portion of the hearing, the Government called an enlisted security guard who testified that he had discovered a .38 caliber automatic pistol in the appellant's car during a gate search at the Oakland Army Base after initially finding a magazine containing five rounds of ammunition between and under the front seats and that the pistol was in a zippered case, along with two additional rounds of ammunition, in the glove compartment. Record 41–42.

Neither the appellant nor the Government has cited a military case addressing this issue in the context of a locked glove compartment, and we have also been unable to find an identical precedent among reported military cases. There appears to be only one federal court decision based on a similar factual predicate, however. *Cf. United States v. Barber*, 594 F.2d 1242 (9th Cir.1979) (carrying a firearm in violation of 18 U.S.C. § 924(c)(2) includes transporting or possessing a gun even in a locked glove compartment).

The Government cites several state court decisions supporting conviction under state laws or local ordinances. *Cf. State v. Goodwin*, 184 Neb. 537, 169 N.W.2d 270 (1969), *cert. denied*, 397 U.S. 1046, 90 S.Ct. 1374, 25 L.Ed.2d 658 (1970) (loaded pistol in locked glove compartment is concealed on or about the person of the driver where state statute provided that presence of weapon in automobile was prima facie evidence of possession by all persons occupying the automobile at the time); *Cleveland v. Betts*, 107 Ohio App. 511, 148 N.E.2d 708 (1958) (revolver in locked glove compartment was on or about the person of the driver under municipal ordinance making such a crime a misdemeanor but conviction reversed because ordinance conflicted with state statute which made the same crime a felony).

Although the appellant does not directly cite any contrary decisions on these facts, he mentions *Williams v. Commonwealth*, 261 S.W.2d 807 (1953), which refers to an earlier Kentucky decision in *Turley v. Commonwealth*, 307 Ky. 89, 209 S.W.2d 843 (1948), where it was held that it was not a violation of Kentucky's prohibition against carrying a concealed weapon to have a pistol in a locked glove compartment. The *Williams* decision is mentioned in an Army Board of Review decision stating the general rule that on or about one's person refers to weapons within an accused's immediate reach. *See. United States v. Detuccio*, 29 C.M.R. 879, 885, 1960 WL 4615 (A.B.R. 1960) (guilty plea not improvident where weapon found under the driver's seat).

The appellant also cites *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976), for his contention that the military judge failed to make an adequate inquiry when the appellant told him that the glove compartment was locked and that that information was inconsistent with the appellant's "legal conclusion" that the pistol was within his im-

---

ER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. [FOOTNOTE OMITTED.].
IV. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE APPELLANT'S MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. [CITATIONS AND FOOTNOTE OMITTED.] BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

2. The fact that the pistol was unloaded does not prevent its use as a dangerous weapon under military law, Manual for Courts–Martial, United States, 1984, Part IV, ¶ 112c(2), and that is not the basis of the appellant's assignment of error. The appellant also revealed during the military judge's inquiry that there was ammunition in the car under the seat and that the ammunition was as "readily available" to him as was the pistol.

mediate reach. Unlike *Jemmings*, however, where the accused always maintained that he had been forced into committing the offense he had pled guilty to, raising the possible defense of duress, the appellant here never asserted that he thought the pistol was not within his immediate reach but actually stated that he believed it was in his immediate reach or access *after* he told the military judge that the glove compartment was locked. Record at 17–19.

In *United States v. Ballesteros*, 29 M.J. 14 (C.M.A.1989), the Court of Military Appeals addressed a contention very similar to that now raised by the appellant involving the possession of a pistol concealed in a locked briefcase in the cab of the pickup truck Ballesteros had been driving. There the Court stated:

> First, we note that appellant was not required to plead guilty, and he could easily have raised these possible defenses at his court-martial. Second, we find that the judge was sensitive to the very matters now raised on appeal, and he particularly examined and resolved them to his satisfaction and appellant's. Third, we find the facts of this case, as reflected in appellant's own responses, show sufficient accessibility to the loaded gun to satisfy the element of being "on or about his person" within the meaning of military law. In any event, post-trial speculation concerning the ownership of the briefcase or *the whereabouts of its key* pales before appellant's express admission of guilt.

29 M.J. at 15–16 (citations omitted) (emphasis added). We reach the same conclusion in the case now before us. We do not think the military judge is required to ask how long an accused thinks it might take him or her to retrieve the weapon or to determine how adept an accused may be in opening the locked compartment in any given instance.

■ As to the appellant's second assignment of error, he fails to allege what possible prejudice he could have suffered as a

result of the staff judge advocate's recommending that the convening authority suspend confinement in excess of 75 days in accordance with the pretrial agreement when the sentence adjudged included only 2 months' confinement. Although the promulgating order and the convening authority's action on the case are not dated, the appellant's trial defense counsel was served with a copy of the recommendation and the appellant does not now allege that the convening authority acted prematurely. Consequently, any error concerning this mistaken advice has been waived, and it does not constitute plain error. *United States v. Lowry*, 33 M.J. 1035 (N.M.C.M.R. 1991).

The appellant's remaining assignments of error are also without merit. *United States v. Graf*, 35 M.J. 450 (C.M.A.1992); *United States v. Weiss*, 36 M.J. 224 (C.M.A. 1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

BARNES, Judge (dissenting in part/concurring in part):

In accordance with his pleas of guilty appellant was convicted by special court-martial of the offense of carrying a concealed weapon and assault on a superior noncommissioned officer. Appellate defense counsel assigned four errors for review by this Court, the first of which asserts that the plea of guilty to the offense of carrying a concealed weapon in violation of Articles 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, was not provident. Appellant urges that the undisputed facts, as a matter of law, do not support the conclusion that the weapon was within appellant's immediate reach.[1] I agree.

On 21 July 1991, military police on the Oakland Army Base searched appellant's car during a gate inspection. They found a pistol clip containing five rounds under-

---

**1.** The evidence must establish that "the weapon was carried on the accused person or was within the immediate reach of the accused." Manu-

al for Courts–Martial, United States, 1984 (M.C.M.), Part IV, ¶ 112c(3).

neath the front seat, and, subsequently, discovered an unloaded .380 caliber pistol, encased in a zipper bag, with two more rounds in the locked glove box of the car. The accused tendered pleas of guilty to that offense (and to the battery of a superior noncommissioned officer which arose out of an unrelated incident) in exchange for the benefits of a pretrial agreement. During the colloquy between the military judge and appellant, he was asked to affirm that the weapon was within his "immediate reach". He did so, but additional information contradicts that conclusion.[2]

The troublesome feature of this case is that possessing or carrying a firearm in an automobile is not unlawful, per se. However, when the firearm is locked away or secured in some manner it is usually concealed.[3] Therefore, the driver or occupant of a motor vehicle may violate the prohibition of knowingly carrying a concealed weapon on or about his person, whenever a dangerous weapon is found in an automobile in an area deemed to be within the driver or occupant's immediate reach. The crux of the matter is to determine if the appellant, herein, possessed a weapon, not on his person, but within his immediate reach. Possession of firearms is often regulated or prohibited on military installations by general orders; in the absence of a base rule or regulation prohibiting mere possession of the handgun or firearm in any given time and place, responsible citizens subject to the Code ought to be permitted to accomplish that which is otherwise a lawful act by exercising common sense, good judgment and a rule of reason, without running afoul of the prohibition imposed by the general article.

The thrust of the prohibition is to prevent the momentary or immediate production of a weapon inspired by some unlawful purpose or heat of passion. *Cf. United States v. Detuccio*, 29 C.M.R. 879, 1960 WL 4615 (A.B.R.1960). Any decision to affirm the guilt of the appellant depends upon a correlation between the ease and quickness with which the appellant would have had access to the dangerous weapon. The dangerous character of a firearm does not depend on whether it is loaded.[4] It may be argued that carrying a firearm any place within the passenger compartment or unlocked glove compartment of an automobile, whether or not ammunition is avail-

---

**2.** Defendant was asked whether the pistol was within his immediate reach while it was in the glove box of the car. His response was in the affirmative. Record at 19. But, he had previously pointed out, gratuitously, that the pistol was in the locked glove box and was not loaded. Record at 17. In testimony offered during sentencing it was further disclosed that the pistol was also in a zipper case. Record at 42.

**3.** Any weapon situated out of view in an automobile, in a case or container, in the trunk, under a seat or covered on a seat or floor board or in a glove compartment and kept from sight is concealed.

**4.** Although the military judge in his inquiry appeared to be concerned about the availability of ammunition for the purpose of establishing the dangerous character of a pistol, that is unnecessary. M.C.M., Part IV, ¶ 112c(2) provides: "[A] weapon is dangerous if it was specifically designed for the purpose of doing grievous bodily harm...." Loaded or unloaded firearms are fairly incorporated in the definition of "dangerous weapon" contained in the Code. An unloaded pistol was held to be a concealed weapon for the purpose of affirming a violation of this punitive article in *United States v. Smith*, 36 M.J. 838 (A.C.M.R.1993), following the rationale of *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986). In *McLaughlin* the accused argued that displaying an unloaded handgun in the commission of a bank robbery should preclude the enhanced penalty for assault by use of a "dangerous weapon." In that context the perpetrator intended that the pistol would be recognized for what it was, an instrument of danger, death and destruction. Those at whom the pistol was pointed would be expected to entertain a reasonable belief that it was capable of accomplishing the purpose for which it was designed, namely, to inflict grievous bodily injury. Mere display would instill fear and create an immediate danger that further violence would ensue or escalate. In *Smith*, the weapon was under the seat of a motor vehicle and could have been retrieved at any time by merely reaching under the seat. Equally accessible was the ammunition which was loaded into a clip and found in the ashtray. The Army Court concluded, however, that the statute was violated "regardless of whether it [the pistol] is loaded or unloaded," 36 M.J. at 839, thus rendering the accessibility of ammunition superfluous. Culpability rests on accessibility of the firearm. The presence of ammunition could thereafter be considered a matter in aggravation.

able, creates an untenable and unlawful situation of immediate accessibility.[5] I would object to defining "immediate reach" to a locked glove compartment and even more to the situation where the firearm is also encased within that locked compartment. Surely, a weapon transported in that manner is sufficiently inaccessible, as a matter of law, and such conduct, standing alone, should not subject any person to criminal sanctions.

In the case of *United States v. Ballesteros,* 29 M.J. 14 (C.M.A.1989), our senior court permitted a finding of guilty to stand where the appellant had conceded during the providence inquiry that a gun locked in a briefcase in the passenger compartment was within his immediate reach. The Court went on to specifically note that, "the judge was sensitive to the very matters now raised on appeal and he particularly examined and resolved them to his satisfaction and appellant's." *Id.* at 15–16. Their holding did not mean to foreclose examination on appeal of the providence of a guilty plea in every case where the defendant grudgingly concedes that a weapon was within his immediate reach. The concession does not make it true, particularly if the facts do not support the conclusion. *Cf. United States v. Jemmings,* 1 M.J. 414 (C.M.A.1976).

Finally, the majority suggests that *United States v. Barber,* 594 F.2d 1242 (9th Cir.1979), provides a precedent upon which we can conclude that carrying a firearm in a locked glove compartment is sufficient to establish criminality under the Uniform Code of Military Justice. I respectfully disagree. That decision construes 18 U.S.C. § 924(c)(2), which serves to enhance the penalty of a person who in the commission of a felony, "carries a firearm unlawfully." Evidence of the felonious mischief does not depend on mere possession of the firearm; indeed, before the enhanced penalty is applicable, the evidence must establish that the offender has in some other manner demonstrated his evil intentions and purpose by committing a felony for which he may be prosecuted in a court of the United States. That statute seeks to discourage thoughtful persons who are committing felonies from providing for the availability of firearms in the pursuit of their misconduct. Delay in time or space occasioned by a calculating offender because the weapon is disassembled or locked in a glove box, a separate container or in an automobile trunk does not diminish the propriety or efficacy of a statute which seeks to preclude carrying a weapon to the scene of a crime where it could be retrieved at the leisure of the miscreant and used with impunity. On the contrary, the offense proscribing the carrying of concealed weapons on or about the person and within "immediate reach," is a constraint upon mere possession, but, while extending the zone of impermissible carrying of concealed weapons, it limits the prosecution to cases where the weapon is immediately accessible.

Clearly, while members of the armed forces must be permitted to possess and carry concealed, dangerous weapons (to include firearms) in a vehicle, sound judgement is advised. Cursory examination of similar state statutes and case decisions suggest different conclusions may result as triers of fact struggle with the concept of immediate accessibility. *See* W.M. Moldoff, Annotation, *Offense of carrying concealed weapons as affected by manner of carrying or place of concealment,* 43 A.L.R.2d 492 (1955). Transporting a firearm in a motor vehicle through various state and local jurisdictions is akin to walking blindfolded through a mine field. Prudence would dictate that carrying a firearm in an automobile requires that it be unloaded, encased, disassembled as far as practi-

---

5. It is disconcerting if, as in this case, once a weapon is retrieved it could be loaded by the momentary insertion of a loaded ammunition clip into the receiver whereupon the weapon in question would reach its greatest potential for danger. Certainly such matters need to be considered by the person who seeks to be a law-abiding possessor of a firearm. An unloaded

firearm within immediate reach when ammunition is also within immediate reach violates a zone of caution which the statute seeks to erect. Undoubtedly, prudence and public safety are sufficient explanations of the prohibition imposed against the carrying of concealed (mere possession) firearms without requiring further proof of malevolent intent.

cable, with the ammunition carried in a separate container (not in the clip) and in separate locked compartments unreachable by the driver or occupant when seated in the passenger compartment of the vehicle.

Accordingly, I have concluded that the factual basis presented during the providence inquiry, together with the undisputed facts disclosed during the sentencing portion of the court-martial, do not support the finding of guilty to Charge II and the Specification thereunder alleging the offense of carrying a concealed weapon. I concur in the opinion of the majority that appellant's remaining assignments of error are without merit.

Finding no error with the findings of guilty of Charge I and its specification and having reassessed the sentence on the basis of the error noted and the entire record, applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), I would concur with the majority in approving the sentence approved on review below.