**UNITED STATES**

v.

**Tyrone DAVIS, 251 08 7313 Corporal (E–4), U.S. Marine Corps.**

**NMCM 95 00098.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 6 Sept. 1994.

Decided 3 Jan. 1997.

LT James T. Mahoney, JAGC, USNR, Appellate Defense Counsel.

LCDR Nancy B. Jones, JAGC, USN, Appellate Government Counsel.

En Banc.

KEATING, Senior Judge:

Corporal Davis was charged with several offenses, the most serious of which was assault with a dangerous weapon, a loaded pistol, in violation of Article 128(b)(1), UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 928(b)(1)(1994) [hereinafter UCMJ]. Pursuant to a pretrial agreement, he pled guilty to, among others, the lesser included offense of simple assault consummated by battery (pointing an unloaded pistol at the victim and touching the victim's head with the pistol). The Government went forward on the greater offense, and the military judge found the appellant guilty of assault with a dangerous weapon, to wit: an unloaded semi-automatic pistol.

The appellant assigns two errors,[1] the second of which asserts that the military judge

---

1.  I. THE MILITARY JUDGE MISCALCULATED APPELLANT'S MAXIMUM TERM OF CONFINEMENT, RESULTING IN AN OVERESTIMATION OF MORE THAN 40%.

II. THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN RULING THAT ASSAULT WITH AN UNLOADED PISTOL IS PUNISHABLE AS AN ASSAULT WITH A DEADLY WEAPON UNDER UCMJ ARTICLE 128(b), IN DISREGARD FOR MANUAL FOR COURTS–MARTIAL ¶ 54c(4)(a)(ii)(1995 ed).

erred in finding as a matter of law that the unloaded pistol was a dangerous weapon and asks that we affirm only the lesser included offense of simple assault.[2] We hold that an aggravated assault can be committed under Article 128, UCMJ, 10 U.S.C § 928, with an unloaded pistol if the victim has a reasonable apprehension of death or grievous bodily harm, and without regard to the actual present ability of the weapon to inflict such harm. We affirm the findings and sentence.[3]

The appellant was a member of a group of Marines who subjected another Marine to what is euphemistically known as a "fumble" or a "blanket party," during which the victim was beaten and kicked as a form of unauthorized discipline. During the attack, the appellant pointed his .38 caliber semi-automatic pistol at the victim, touched the victim's head with the muzzle of the pistol, and said, "I ought to cap you now." Record at 71. The pistol was not loaded; however, the victim believed that it was loaded and was apparently placed in fear for his life by the appellant's actions.

The victim also testified that the appellant struck him on the back of his head with the pistol. Had the unloaded pistol been used as a bludgeon, it would qualify as a dangerous weapon for aggravated assault purposes according to the illustration found in the MANUAL FOR COURTS-MARTIAL ("the Manual" or "MCM"), United States (1995 ed.), Part IV, ¶ 54c(4). An allegation to that effect was deleted from the specification prior to trial. Thus we are presented squarely with the issue of whether the unloaded pistol can be a dangerous weapon for aggravated assault purposes under Article 128(b)(1), UCMJ, 10 U.S.C. § 128(6)(1).

The military trial judge cited the decision in *United States v. Sullivan*, 36 M.J. 574 (A.C.M.R.1992), as authority for finding that the unloaded pistol used by the appellant to threaten the victim with death was a dangerous weapon. In doing so, he rejected the express language of MCM, Part IV, ¶ 54c (4)(a)(ii), stating that "on the other hand, an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon or a means or force likely to produce grievous bodily harm, whether or not the assailant knew it was unloaded."

In *Sullivan*, one panel of the Army Court of Military Review departed from a long line of Army decisions and declared the above quoted manual language to be no longer valid. The court began by noting that the UCMJ does not define the term "dangerous weapon" and then observed that current law focuses on how the weapon is used rather than on its actual capability. It also takes into account the victim's reaction. *Sullivan*, 36 M.J. at 577. Applying the rationale of the Supreme Court in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), the *Sullivan* court held that the pistol in the case was a "dangerous weapon" regardless of whether it was loaded or functional.[4]

Two years later, in *United States v. Rivera*, 40 M.J. 544 (A.C.M.R.1994), a different Army panel declined to follow *Sullivan*, characterizing its application of *McLaughlin* as

---

2. We have considered the remaining assignment of error and the arguments and briefs of both appellate defense and appellate government counsel, and we conclude that no error materially prejudicial to the substantial rights of the appellant was committed.

3. The maximum punishment for a simple assault is confinement for 3 months and forfeiture of two-thirds pay per month for 3 months. Assault with a dangerous weapon, when committed with a loaded firearm, authorizes dishonorable discharge, forfeiture of all pay and allowances, and confinement for 8 years. Other cases of assault with a dangerous weapon authorize dishonorable discharge, forfeiture of all pay and allowances, and confinement for 3 years. MCM, Part IV, ¶ 54e(8). This case falls into the latter category.

4. *McLaughlin* concerned the Federal bank robbery statute, 18 U.S.C. § 2113, under which punishment is enhanced if a bank robber puts the life of any person in jeopardy by the use of a dangerous weapon or device. In part to resolve a conflict among the Federal circuits regarding the issue of whether an unloaded firearm is a dangerous weapon, the Supreme Court granted *certiorari* and held that a gun is typically and characteristically dangerous, its intended use is a dangerous one, and the law may presume that such an object is always dangerous, even though not armed at a particular time or place. *McLaughlin*, 476 U.S. at 18, 106 S.Ct. at 1678.

dicta, and held that an unloaded pistol, used as a firearm and not as a bludgeon, is not a "dangerous" weapon within the meaning of Article 128(b)(1), UCMJ, 10 U.S.C. § 128(b)(1). The *Rivera* panel rejected the Supreme Court's reasoning in *McLaughlin*, seeing no "legally significant similarity" between the Federal bank robbery statute and Article 128, UCMJ, aside from the common use of the words "dangerous weapon." *Rivera*, 40 M.J. at 548.

The *Rivera* panel took the view that the term 'dangerous weapon' "is expressly defined in 10 U.S.C. § 928" as "any means used in a manner likely to bring death or grievous bodily harm to the object of the assault." *Id.*[5] The court relied on the same line of Army decisions rejected in *Sullivan*. It concluded that when Congress enacted the UCMJ in 1951, "Article 128 became the embodiment of the 1949 MANUAL FOR COURTS-MARTIAL and prevailing common law followed by the military and Federal courts at the time it was enacted." *Rivera*, 40 M.J. at 547.[6]

Finally, in *United States v. Turner*, 42 M.J. 689 (Army Ct.Crim.App.1995), the Army court, *en banc*, expressly overruled *Sullivan*. The court began its analysis of the law by stating: "A 'dangerous weapon' for purposes of Article 128(b)(1), UCMJ, is a weapon that has the inherent present capability of inflicting death or grievous bodily harm." *Turner* at 691. No authority is cited for this broad statement. However, for the narrower statement that follows that an "unloaded pistol ... is not a 'dangerous weapon' for purposes of Article 128(b)(1), UCMJ," the court cites *United States v. Smith*, 4 C.M.A. 41, 15 C.M.R. 41, 1954 WL 2250 (1954). *Id.* We believe that *Smith* stands for an entirely different proposition of law, as will be discussed later.

Whether an unloaded pistol, when pointed at someone, is a dangerous weapon as that term is used in Article 128(b)(1), 10 U.S.C. § 128(b)(1), UCMJ is a pure question of law and requires us to conduct a *de novo* review. See *United States v. Davis*, 36 M.J. 337, 340 (C.M.A.1993). It is an issue of first impression before this court. We have decided several closely related issues, but neither we nor the Court of Appeals for the Armed Forces have decided a case precisely on point. The cases that have been decided, however, support the *Sullivan* court's view that an unloaded pistol can be a deadly weapon for aggravated assault purposes under military law.

In *United States v. Henry*, 35 M.J. 136 (C.M.A.1992), the accused was convicted of robbery, in violation of Article 122, UCMJ, 10 U.S.C. § 922, and qualified for an enhanced sentence under the MANUAL FOR COURTS-MARTIAL because he used a firearm during the robbery. The firearm, however, was inoperable. In spite of this fact, our superior court approved the sentence enhancement, adopting the rationale found in *McLaughlin* and other federal cases. The court specifically declined to adopt as the test for what constitutes a firearm, whether the weapon is actually capable of being used as a firearm. *Henry*, 35 M.J. at 137.[7]

We have also held that an unloaded firearm is a dangerous weapon in a prosecution for carrying a concealed weapon in violation of Article 134, UCMJ, 10 U.S.C. § 934. *United States v. Booker*, 37 M.J. 1114 (N.M.C.M.R.1993), *affirmed*, 42 M.J. 267 (1995). We noted in a footnote that the fact that the pistol was unloaded does not prevent its use as a dangerous weapon under military law, MANUAL FOR COURTS-MARTIAL, United States, 1984(ed.), Part IV, ¶ 112c(2). "For purposes of this paragraph, a weapon is dangerous if it was specifically designed for the

---

5. But, the same opinion also says the authority to create or define elements of an offense are the respective sole prerogatives of Congress and the judiciary. *Rivera*, 40 M.J. at 549. We believe Congress could define the term "dangerous weapon" if it so chose but that it has not done so.

6. "It is of course not true that whenever Congress enacts legislation using a word that has been given administrative interpretation it means

to freeze that administrative interpretation in place." *Lukhard v. Reed*, 481 U.S. 368, 379, 107 S.Ct. 1807, 1814, 95 L.Ed.2d 328 (1987), citing *Helvering v. Wilshire Oil Company*, 308 U.S. 90, 100–101, 60 S.Ct. 18, 24–25, 84 L.Ed. 101 (1939).

7. The *Sullivan* case was decided after *Henry* but did not cite it. Both cases were decided in 1992.

purpose of doing grievous bodily harm, or it was used or intended to be used by the accused to do grievous bodily harm." *Id.* Accord, *United States v. Smith,* 36 M.J. 838 (A.C.M.R.1993).

In *United States v. Palmer,* 41 M.J. 747 (N.M.Ct.Crim.App.1994), this court applied the reasoning of *McLaughlin* in concluding that an unloaded firearm is a dangerous weapon as that term is used in a general regulation prohibiting the wrongful possession of such an object. We distinguished assault cases, where the proper focus is on the use of the instrument or weapon, from possession cases where there is no use. We concluded that for possession cases, the focus should be on the nature of the item, its design, and its intended purpose. Accordingly, we rejected the argument based on paragraph 54c(4)(a)(ii) of the Manual. Citing *McLaughlin,* we held that all guns, loaded or not, are dangerous weapons in such a case. *Palmer,* 41 M.J. at 750.

More to the point, however, is an early decision of the Court of Military Appeals that declined to apply the Manual unloaded pistol illustration in an aggravated assault case involving a knife. *United States v. Smith,* 15 C.M.R. 41, 1954 WL 2250 (1954). The court recognized two principle approaches to assault law analysis. These are the "present ability" approach, which is entirely objective and solely from the view point of the assailant, and the "apparent ability" approach, which is essentially subjective and from the view point of the victim.

The *Smith* opinion characterized the Manual's approach of viewing assault generally through the eyes of the victim except in two instances, as logically inconsistent. One of the inconsistencies criticized was the Manual illustration that "an unloaded pistol, when presented as a firearm ... is not a dangerous weapon ..." *Smith,* 15 C.M.R. at 47. The majority specifically rejected as "much too naive" the hypothesis that the Manual had adopted the subjective "apparent ability" test for simple assault but had adopted the

"present ability" approach for aggravation. *Id.* at 48.

The defense argued that, as a matter of law, *Smith* could not have been found guilty of aggravated assault with an unthrown knife from a distance of 9 or 10 yards. The members found the knife had been used as a "dangerous weapon" despite the distance and the lack of evidence of intent to throw it. The court expressly declined to hold, as a matter of law, that a knife, when used as a cutting instrument, could not be a "dangerous weapon" if the accused could not actually harm his victim with it. *Smith,* 15 C.M.R. at 45.

Instead, the court affirmed the conviction, holding that an aggravated assault can be committed under Article 128, 10 U.S.C. § 928, UCMJ, if the victim has a *reasonable apprehension* of death or grievous bodily harm. This is so even if the victim's apprehension is "based on his ignorance of the nature of the weapon used and its effective range." *Smith,* 15 C.M.R. at 47. Thus, the broad statement in *Turner* that a "dangerous weapon" for Article 128(b)(1), UCMJ, proposes is one "that has the inherent present capability of inflicting death or grievous bodily harm" is not correct, at least for weapons other than pistols.

There is some discussion in *Smith* about the "principles involving an assault with a loaded pistol." In dicta, the court said that under the Manual's language, it is difficult to interpret an unloaded pistol as a "dangerous weapon" since it lacks any sort of power to inflict injury. *Smith,* 15 C.M.R. at 46. *Smith,* however, was decided during the formative years of the Court of Military Appeals at a time when the court apparently assumed that rules of substantive law could be promulgated by the President in the Manual.[8] The court today draws a clear line between the President's authority under Article 36, UCMJ, 10 U.S.C. § 836, to promulgate rules of procedure and evidence, and the judiciary's responsibility to interpret the elements of substantive offenses.

---

8. "Proper respect for the policies underlying the Federal rule, which has been adopted for the military services through the Manual, directs the conclusion that the court-martial in this case was justified in believing that the accused had committed an assault." *Smith,* 15 C.M.R. at 44.

The Court of Appeals for the Armed Forces has held that "it is beyond cavil that Manual explanations of codal offenses are not binding on this Court." *United States v. Gonzalez,* 42 M.J. 469, 474 (1995). Although the President often summarizes the elements of codal offenses in the Manual, these summarizations are not binding on the court, which maintains an independent responsibility to interpret the elements of the offenses. *United States v. Mance,* 26 M.J. 244, 252 (C.M.A.1988); *United States v. Hemingway,* 36 M.J. 349, 351 (C.M.A.1993). The language in the Manual that purports to preclude the courts from interpreting the term "dangerous weapon" to include an unloaded pistol is therefore not "conclusively authoritative." *Cf. Hemingway,* 36 M.J. at 351.

■ Thus, this court is free to follow the reasoning of the Supreme Court in *McLaughlin* and to extend the holding of the Court of Military Appeals in *Smith* to an assault involving a pistol as well as a knife. Notwithstanding the inconsistent Manual language, we hold that an aggravated assault can be committed under Article 128, UCMJ, 10 U.S.C. § 928, with an unloaded pistol if the victim has a reasonable apprehension of death or grievous bodily harm. This is so even if that apprehension is based on ignorance as to whether the weapon is actually loaded and in operating condition or not.

The result might be different if we were dealing with an attempt-type assault, where the focus is properly on the assailant's state of mind rather than that of the victim. In such a case, knowledge that the pistol is unloaded or inoperable may well preclude conviction for aggravated assault.[9] But here, in the case of an offer-type assault, the gravamen of the crime is putting the victim in fear. The approach in such a case "cannot be a subjective one, for there is wholly left out of account the possibility of genuine apprehension on the part of the target based on his ignorance of the nature of the weapon used and its effective range." *Smith,* 15 C.M.R. at 47.

Accordingly, the findings and sentence, as approved below, are affirmed.

Senior Judge CLARK, Judges WYNNE, and OLIVER concur.

OLIVER, Judge, concurring:

I join in the reasoning and the result in Senior Judge Keating's excellent majority opinion. I write separately to emphasize three additional points.

First, I appreciate the dissent's argument that it is not our responsibility as an intermediate appellate court to change the law. However, we cannot escape our responsibility to determine what the law is. Since our superior court has never ruled on the precise issue presented here, we have an obligation to seek to ascertain and apply the law properly. As discussed in the majority opinion and Judge Johnson's well reasoned dissent in *United States v. Turner,* 42 M.J. 689, 692–95 (Army Ct.Crim.App.1995), I believe that the guidance from our superior Court in *United States v. Smith,* 4 C.M.A. 41, 15 C.M.R. 41, 1954 WL 2250 (1954), is that we should analyze aggravated assault cases in the military from a subjective, "apparent ability" perspective. 15 C.M.R. at 47 ("there can be no doubt [that the appropriate test is one] of 'apparent ability.'") After a careful review of the record of trial, I have no doubt that the victim was under a reasonable apprehension of being killed or suffering grievous bodily harm when the appellant pointed a gun at his head and threatened to shoot him.[1]

---

9. "The logical position is that one may be guilty of an assault by attempting to shoot another with a gun that one mistakenly believes to be loaded or by threatening with a gun that the other does not know is unloaded." ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW, 167 (3rd.ed.1982).

1. The dissent criticizes the majority opinion in arguing that we cannot be sure that the victim was in fear for his life, "because [he] did not so testify." *United States v. Davis,* N.M.C.M. 95 00098, (N.M.C.Ct.Crim.App., 3 January 1997)(Lucas, J., dissenting). It is instructive to review PFC Simon's actual testimony in this regard. After testifying that several Marines had been beating him with their hands and feet and had tied his feet together with tape, he continued:

Q: [Did Corporal Davis] put a gun to your head?
A: Yes, sir.
Q: What went through your mind then?

Therefore, a finding of aggravated assault is appropriate. Stated another way, when the appellant demonstrated his apparent ability and willingness to shoot PFC Simon in the head, he committed more than a simple assault under the UCMJ.

Second, I read the plain language of Article 128(b)(1), UCMJ, 10 U.S.C. § 928(b)(1) as leading to a natural, common-sense conclusion which supports the majority opinion but which is at direct variance with the dissent's textual analysis. The relevant statute provides that an aggravated assault takes place when any person subject to the UCMJ "commits an assault with a dangerous weapon...." Art. 128(b)(1), UCMJ, 10 U.S.C. § 928(b)(1). Every servicemember is taught from the day he or she enters the military that any firearm, loaded or not, is always "a dangerous weapon." Because of this assumption, military personnel treat weapons with the utmost respect, lock them away when not in use, and always point them downrange and away from others whenever in use. The military maxim is: Never point a weapon at someone unless you intend to shoot him. I am unwilling to conclude that the vagaries of military jurisprudence mandate that we must treat unloaded weapons as "'dangerous' for virtually all purposes ... except when proffered as a firearm during an offer-battery type assault!" *See Turner*, 42 M.J. at 692 (Johnson, J., dissenting).

Moreover, despite the dissent's assertion to the contrary, the second clause in Article 128(b)(1), UCMJ, 10 U.S.C. § 928(b)(1), does not qualify the first. Rather, I read it as providing an independent basis for criminal liability. *See* NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 21.14 (5th ed.1993)(noting that "the disjunctive 'or' usu-

ally ... separates words or phrases in the alternate relationship, indicating that either of the separated words or phrases may be employed without the other...."). The second clause, which is separated by the disjunctive, reads: "or other means likely to produce death or grievous bodily harm...." Art. 128(b)(1), UCMJ (emphasis added). Consistent with the normal rules of statutory construction, the phrase "likely to produce death or serious bodily harm" only modifies "other means." If one were to pick up a lamp stand, which is not a weapon and would not ordinarily be considered dangerous, and lift it high above another's head, threatening to bring it crashing down, that would constitute an aggravated assault by "other means likely to produce death or grievous bodily injury." A handgun, loaded or not, is always a weapon and, when used in a threatening manner, can reasonably be considered dangerous. Under the aggravated assault statute, it does not have to meet the additional objective test of being loaded and therefore actually likely to produce death or serious injury. Under military law, "apparent ability" is enough. *Smith*, 15 C.M.R. at 47.

Third, I find far more persuasive the analysis of the Supreme Court in *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986)(providing reasons why an unloaded pistol is always a "dangerous weapon"), than *Price v. United States*, 156 F. 950 (9th Cir.1907). The dissent relies heavily on this 1907 case as establishing the so-called "*Price* rule," frozen in time, from which we may never depart unless and until the Congress sees fit to amend the UCMJ. I disagree. In *McLaughlin* a unanimous Supreme Court concluded that "the law

A: "This guy's got a gun to my head," and I was trying to think of a way out of this; "What should I do?"
Q: Did you think the gun was loaded?
A: Yes, sir; I did.
Q: Where did he place the gun in relation to your body?
A: My left temple, sir.
Q: Did he touch you with it?
A: Yes, sir; he did.
Q: Did he say anything to you when he did that?
A: Yes, sir. First he put the weapon to my head. He put the gun to the top of my head, sir,

and he said—his exact words were "I thought you were a player. You're nothing but a pussy. I ought to cap you now."
Q: What did you take by that, when he said, "I ought to cap you now"?
A: I thought he was going to shoot me, sir. They were all very drunk. ....
Record at 70–71. I think it entirely reasonable to conclude that the victim's belief that the appellant was about to fire a loaded handgun into his left temple or into the top of his head placed him in fear for his life.

reasonably may presume that [a gun] is always dangerous even though it may not be armed at a particular time or place." 476 U.S. at 17, 106 S.Ct. at 1678. Although *McLaughlin* was interpreting the term "dangerous weapon" in a somewhat different context, it nonetheless has considerably more contemporary relevance than does *Price.* Indeed, *Price,* surveying cases from the late 1800's and early 1900's, was describing the state-of-the-law concerning the much less sophisticated weapons of 90 or more years ago. As *McLaughlin* illustrates, the law is changing to reflect that modern handgun weapons are "always dangerous." 476 U.S. at 17, 106 S.Ct. at 1678.

Therefore, I conclude that the appellant committed an assault with a dangerous weapon, to wit: an unloaded pistol, and that the findings and sentence are appropriate.

Judge LUCAS, Chief Judge DOMBROSKI, and Senior Judge McLAUGHLIN dissent.

LUCAS, Judge, dissenting:

I respectfully dissent. The majority has unfortunately constructed its opinion on a fundamentally flawed premise, that this is a case of first impression. The majority has also apparently engaged in a process of result-oriented wishful thinking, blurring the distinction between what the law perhaps should be and what the law, in fact, is. The issue in this case is very narrow and important. It is simply whether an unloaded firearm, when merely pointed at someone, is a dangerous weapon, as that term is used in Article 128(b)(1), Uniform Code of Military Justice, 10 U.S.C. § 928(b)(1), [hereinafter Article 128(b)(1)]. We emphasize the last part of the preceding sentence because the majority would have us believe that because the Supreme Court has held that an unloaded firearm is a dangerous weapon as that term is used in a federal civilian bank robbery statute, and because this court and our superior court have held that an unloaded firearm is a dangerous weapon for two non-Article 128(b)(1) offenses, it necessarily follows that an unloaded firearm is always a dangerous weapon for every offense under the UCMJ, including Article 128(b)(1). That

faulty reasoning results in their decision, which is unsupported by any applicable legal authority. The majority ignores many decades of military precedent, contrary or distinguishing aspects of its own cited cases, the documented history of Article 128(b)(1), and fundamental rules of statutory interpretation. The majority has, in effect, improperly legislated a change to Article 128(b)(1). I will not join in such an ill-advised endeavor.

The appellant was charged with assault with a dangerous weapon, a loaded pistol, in violation of Article 128(b)(1). Pursuant to a pretrial agreement, he pled guilty to the lesser included offense of simple assault consummated by battery (pointing an unloaded pistol at the victim and touching the victim's head with the pistol). The Government went forward on the greater offense. Whether the pistol was loaded at the time of the assault was a disputed question of fact. The general court-martial, military judge alone, found that the pistol was unloaded but found the appellant guilty of assault with a dangerous weapon; the unloaded pistol. It is clear from the record that the trial judge reached his decision to find the appellant guilty of the aggravated assault, even though the pistol was not loaded, by using as authority a subsequently overruled decision by a single panel of the Army Court of Criminal Appeals.

The appellant was a member of a group of Marines who subjected another Marine to what is commonly referred to as a blanket party, during which the victim was beaten and kicked. During the attack, the appellant pointed a pistol at the victim and touched the victim's head with the muzzle of the pistol. As we indicated above, the trial court found that the pistol was not loaded. However, the victim was not aware of that fact. Additionally, although the appellant denied saying the words, the trial court also found the appellant guilty of communicating a threat by saying "I ought to cap you," as he pointed the pistol at the victim. The majority indicates that the victim was placed in fear for his life. We do not know this to be the case, because the victim did not so testify.

The victim testified that he believed the appellant may have struck him on the back of

his head with the pistol during the assault. For some unexplained reason, however, that factual allegation was deleted from the aggravated assault specification prior to trial. Therefore, the use of the unloaded pistol as a bludgeon, which may have qualified it as a dangerous weapon for Article 128(b)(1) under a traditional analysis, cannot be used for such a purpose in this case.

We are left with a pure question of law, whether merely pointing an unloaded pistol at someone constitutes the offense of assault with a dangerous weapon, as that term is used in Article 128(b)(1).

The trial and defense counsel both submitted legal briefs on the specific issue to the military judge. *See* Appellate Exhibits IV and V. The trial judge expressed his reliance on the case of *United States v. Sullivan,* 36 M.J. 574 (A.C.M.R.1992), offered by the trial counsel, as authority for his holding that the appellant's unloaded pistol was a dangerous weapon, notwithstanding the express language of MCM, Part IV, ¶ 54c(4)(a)(ii), indicating that "an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon ... whether or not the assailant knew it was unloaded."

In *Sullivan,* the accused pointed a loaded pistol at the victim. The *Sullivan* Army panel held first that no pistol, loaded or not, qualified as a dangerous weapon unless the Government established that the pistol was functional at the time of the assault, which the prosecutor had not done in that case. Inexplicably, and unnecessarily, the *Sullivan* panel also held that a pointed unloaded pistol is a dangerous weapon, if functional, citing the Supreme Court's decision in *McLaughlin v. United States,* 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986). Finally, in a footnote, the *Sullivan* panel also opined that MCM, Part IV, ¶ 54c(4)(a)(ii), Part IV, MCM was therefore no longer valid.

In *McLaughlin,* a very short opinion, the accused and a companion robbed a bank. McLaughlin displayed an unloaded pistol during the robbery. He was charged with and convicted of violating a federal bank robbery statute, 18 U.S.C. § 2113. Under that statute, punishment was enhanced if the actor put the life of any person in jeopardy

by the use of a dangerous weapon. The statute did not define the term "dangerous weapon." To resolve a conflict among two Federal circuits regarding the interpretation of that term in that statute, the Supreme Court granted *certiorari.* The extent of the holding is important. The issue before the Supreme Court was whether an unloaded handgun was a dangerous weapon "within the meaning of the federal bank robbery statute" (emphasis added). *McLaughlin,* 476 U.S. at 16, 106 S.Ct. at 1677. The Court held that the trial and intermediate appellate courts were correct in concluding that McLaughlin's unloaded pistol was a dangerous weapon "within the meaning of 18 U.S.C. § 2113(d)" (emphasis added). *McLaughlin,* 476 U.S. at 17, 106 S.Ct. at 1678. In giving reasons for its decision, the Court, in a footnote, cited floor debate on that particular statute. It is very clear to us that the decision in *McLaughlin* was expressly limited to an interpretation of a term in the bank robbery statute. That Court did not expressly, or by reasonable implication, hold that the term "dangerous weapon" shall have the same meaning in every Federal and military statute. The Court was obviously not interpreting the term "dangerous weapon" as it is used in Article 128(b)(1). The result in the case at bar is that the majority makes the same mistake that the *Sullivan* panel did by applying the *McLaughlin* holding to an Article 128(b)(1) interpretation.

Subsequent to *Sullivan,* in *United States v. Rivera,* 40 M.J. 544 (A.C.M.R.1994), a different Army panel rejected the *Sullivan* panel's reliance on *McLaughlin,* rightfully we believe. In *Rivera,* the court held that an unloaded firearm is not a dangerous weapon as that term is used in Article 128(b)(1), when merely pointed at a victim. The *Rivera* opinion is important and very useful because it provides an excellent examination of the military's historical interpretation of the term "dangerous weapon", as used in Article 128(b)(1). The *Rivera* opinion will be addressed in more detail below.

Finally, in *United States v. Turner,* 42 M.J. 689 (Army Ct.Crim.App.1995), the Army court, *en banc,* expressly overruled *Sullivan.* Turner had pointed an unloaded

pistol at his victims, both of whom believed the pistol to be loaded. Ammunition for the unloaded pistol was nearby and available. With the *Turner* decision, the Army court reaffirmed its historical position that an unloaded firearm, when merely pointed at someone, is not a dangerous weapon as that term is used in Article 128(b)(1), UCMJ.

Article 128(b)(1), indicates that "any person ... who commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm ... is guilty of an aggravated assault...." That language has not changed since first enacted by Congress in 1950. The term "dangerous weapon" has never been defined in Article 128 or elsewhere in the UCMJ. As will be seen, the term is explained in the MCM.

The *Rivera* case provides us with an excellent history of the interpretation of the language in question, especially at pages 546 through 549. We will only add to or emphasize certain parts of the Army court's useful analysis. It is clear to us that in 1950, Congress, in Article 128(b)(1), codified existing military law. That body of military law can easily be traced back to the seminal case of *Price v. United States*, 156 F. 950, 951 (9th Cir.1907). The *Price* court expressly held that an unloaded firearm, when merely pointed at someone, is not a dangerous weapon when the charge is assault with a dangerous weapon. The *Price* court, citing *United States v. Williams*, 2 F. 61, 64 (C.C.D.Or. 1880), also expressly concluded an object must be used in such a manner that is likely to produce death or great bodily injury in order to be a dangerous weapon. These fundamental concepts became what we will refer to as the *Price* rule. In applying the *Price* rule, the primary focus is on the use of an object and its resultant actual capability to inflict great harm.

The *Rivera* opinion, and the cases cited therein, describe in detail the adoption of the *Price* rule in military practice. It has been applied, without exception, for decades. During some of the developmental period, state and Federal jurisdictions were split on the question of whether the mere pointing of an unloaded firearm at someone constituted any assault, simple or aggravated. The legal

principle adopted and developed in military practice is that such a scenario is an assault but not an aggravated form of the offense. For the offense of assault with a dangerous weapon, focus in the military has consistently been on the actual ability to inflict harm as a result of the particular use of the weapon as opposed to the apparent ability to do harm as perceived by the victim.

The earliest Navy case with the facts on point that we are aware of is found at page 48 of Court–Martial Order [C.M.O.]–1 of 1950. This was a pre-UCMJ case. The accused in that case pointed an unloaded firearm at the victim and was prosecuted for assault with a dangerous weapon. The case was resolved applying the *Price* rule. The *Price* rule was subsequently expressly applied in *United States v. Lamb*, 1 C.M.R. 440, 1951 WL 1659 (A.B.R.1951), *petition denied*, 1 C.M.R. 100, 1952 WL 1150, 1952 WL 1154 (C.M.A.1952), also a pre-UCMJ case. *Lamb* was a particularly egregious case in which four soldiers brutally terrorized and raped a Korean woman in the presence of her husband while pointing pistols at her and family members. *Lamb* had been convicted of assault with a dangerous weapon, but the Government had failed to establish that the pistol was loaded. Military appellate courts had the opportunity with those facts to repudiate the *Price* rule, but did not do so, and the aggravated assault conviction did not withstand appellate review.

*See also* the following Article 128(b)(1) cases, in which the *Price* rule was applied without exception. *United States v. Vigil*, 13 C.M.R. 30, 32, 1953 WL 2386 (1953), *United States v. White*, 4 C.M.R. 623, 624–5, 1952 WL 2836 (A.F.B.R.1952), *United States v. Jones*, 5 C.M.R. 507, 510, 1952 WL 2191 (A.F.B.R.1952), *petition denied*, 5 C.M.R. 130, 1952 WL 2973 (1952), *United States v. Reid*, 42 C.M.R. 573, 574, 1970 WL 7166 (A.C.M.R.1970), *United States v. Bush*, 47 C.M.R. 532, 535, 1973 WL 14777 (C.G.C.M.R. 1973), *United States v. Cato*, 17 M.J. 1108, 1109 (A.C.M.R.1984).

Except for the overruled *Sullivan* decision, the decision of the majority in the case at bar is unique: In the almost 45 years since the *Lamb* decision, we are unaware of precedent

holding that an unloaded weapon, when pointed at someone, is a dangerous weapon, as that term is used in Article 128(b)(1).

The *Rivera* court also traces the history of Article 128(b)(1). We add the following to that accounting. In paragraph 180(*l*) of the 1949 MCM for the Army, there is a discussion of the Ninety-third Article of War, which includes the offense of assault with a dangerous weapon. That discussion includes the *Price* rule by indicating that weapons are dangerous only if used in a manner likely to produce death or great bodily harm. The discussion adds that the mere potential for such use is not enough and that a pistol may be used in such a manner as to not qualify as a dangerous weapon.

Similarly, beginning at page 286 of the Legal and Legislative Basis, Manual For Courts–Martial, United States, 1951, there is a discussion of paragraph 207b of the 1951 MCM (applicable for the first time to all services), which addresses the newly-created Article 128(b)(1). The discussion again indicates that the pointing of an unloaded pistol at a person does not amount to an aggravated assault, citing *Price*. These MCM explanations of the principle of law immediately prior to and immediately after, implementation by Congress of Article 128(b)(1) are further persuasive indicators that Congress adopted the *Price* rule. If it had not, we can reasonably expect that the post–1950 MCM explanation of the rule of law would reflect that change. Finally, we note that the *Price* rule has been expressly included in every MCM since 1950.

The majority dismisses the MCM language as an improper attempt by every President since *Price* was adopted in military practice to establish an element of an offense. The majority misses the point. The MCM language is persuasive evidence of what the law is in the military at a particular point in time. In effect, pertinent parts of the MCM are correct statements or restatements of the law. To conclude otherwise would be to conclude that those parts of the MCM are useless and meaningless or that all of our predecessors who helped draft those provisions were uninformed. There being no evidence for such a proposition, we are unwill-

ing to conclude that our legal forbearers misstated the law for several decades. Every MCM provision since *Price* and all the case law, except for *Sullivan* and the majority's opinion, are incontrovertible evidence that for decades a body of military law developed consistently applying the *Price* rule, that the body of law, with the *Price* rule, was codified in 1950 in Article 128(b)(1), and that the *Price* rule has been applied without exception since.

When Article 128(b)(1) was first enacted, there was no confusion about the meaning of the term "dangerous weapon" among military practitioners. Some of those practitioners undoubtedly participated in great measure in the drafting not only of the first uniform MCM, but also with the drafting of the UCMJ. There is a complete absence of any evidence that Congress did not adopt the *Price* rule. There is also a complete absence of evidence that Congress has ever felt the need to subsequently modify the UCMJ because of any misapplication of this specific article by the military.

When Article 128(b)(1) was enacted, common law development rules regarding the offense no longer applied. Instead, there was simply application of the statute to the facts of a particular case. The majority, in effect, has improperly engaged in a process of common law development after the implementation of Article 128(b)(1). The result is an improper legislative change to that statute by the majority.

Additionally, one needs only to read the plain and unambiguous language of Article 128(b)(1), to see that the majority's interpretation is tortured. This article does not use the words "assault with a dangerous weapon or a means or force likely to produce death or grievous bodily harm." The specific wording of the statute, "or other means or force likely to produce death or grievous bodily harm", leads us to only one natural, common sense conclusion; that Congress intended that the use of a weapon, or a means, or a force must all be likely to produce death or grievous bodily harm for the offense of aggravated assault to lie. Any other interpretation is forced and without any historical support. An unloaded firearm, when merely

pointed at someone, is incapable of producing such required harm.

The majority would cite *McLaughlin* for the proposition that an unloaded firearm is dangerous because of the effect it has on victims when pointed at them, or because pointing such an object might produce a deadly response. There is no denying the potential fear generated by pointing an unloaded weapon at a person. However, that does not make the weapon dangerous as that term is used in Article 128(b)(1), and military appellate courts have consistently rejected focus on the fear generated in the victim to determine whether there is an Article 128(b)(1) offense. There are alternative ways to ensure appropriate punishment for someone who points an unloaded firearm at another person. Two obvious methods come to mind. First, Congress can amend Article 128 to include unloaded firearms as dangerous weapons. Second, the President can amend the MCM to increase the punishment in these cases. That is exactly the process that is apparently now underway. A proposed Executive Order is now pending that would amend ¶ 54e(1), Part IV, MCM, which is the section of the Manual establishing the maximum punishments for all Article 128 offenses. That amendment recognizes the *Price* rule and dramatically increases the maximum authorized sentence in cases in which an unloaded firearm is pointed at someone. Not only does the proposed Executive Order still recognize the validity of the *Price* rule, it establishes the necessary fix that is the real concern of the majority, increased punishment in these cases.

In addition to *McLaughlin*, the majority cites other cases to support their decision. However, those cases all have important distinguishing characteristics making them inapplicable to the appellant's case.

The majority's reliance on *United States v. Booker*, 37 M.J. 1114 (N.M.C.M.R.1993), *aff'd*, 42 M.J. 267 (1995), is unfounded. Booker was convicted of carrying a concealed weapon in violation of Article 134, UCMJ, 10 U.S.C. § 934. On review, Booker contended that his guilty plea was improvident because the weapon was locked in the glove compartment of the vehicle he was driving and was

therefore not accessible to him. The issue before that Court was whether his plea to carrying a concealed weapon was provident because he had no access to the weapon. For reasons completely unrelated to the issue in the appellant's case, our court concluded that the plea was provident. As a purely collateral matter to that case, ¶ 112, MCM, applicable by its own terms only to the charged Article 134 offense, indicates that for the offense of carrying a concealed weapon to lie, the weapon must be dangerous. Although Booker's weapon was unloaded, whether the unloaded weapon was a dangerous weapon was not an issue before the court. Even if it was, the President defined the term "dangerous weapon" in ¶ 112, MCM, "for purposes of this paragraph" (emphasis added). Booker's was an Article 134 violation, with the dangerous weapon term defined expressly for that offense only. That case is inapplicable to the appellant's.

In *United States v. Palmer*, 41 M.J. 747 (N.M.Ct.Crim.App.1994), the accused had been convicted of violating Article 92, UCMJ, 10 U.S.C. § 892, for ignoring a provision of a Navy regulation prohibiting the wrongful possession of dangerous weapons. Our court expressly distinguished Article 128(b)(1) cases from wrongful possession cases brought as order violations under Article 92, UCMJ, 10 U.S.C. § 892. Our court also expressly recognized that for assault cases, focus should be on the use of the object to determine whether it is a dangerous weapon (the *Price* rule) but for possession cases, focus may be on the nature of the object; i.e., its design and intended purpose. *Palmer*, 41 M.J. at 749. We then indicated that the gist of that appellant's crime was the same as the offense of carrying a concealed weapon. *Id.* In short, we concluded that the *Booker* analysis was appropriate. Therefore, we also concluded that the applicable definition for the term "dangerous weapon" was the one found in ¶ 112, MCM, the section pertaining to the offense of carrying a concealed weapon. Our decision in *Palmer* is not inconsistent with the *Price* rule, and *Palmer* certainly is not applicable to the appellant's case.

In *United States v. Henry*, 35 M.J. 136 (C.M.A.1992), the accused was convicted of

robbery, in violation of Article 122, UCMJ, 10 U.S.C. § 922. The Government contended that Henry qualified for the President's enhanced sentencing scheme found in the MCM because of the use of a firearm during the robbery and the term "firearm" was defined in the MCM. In fact, the weapon used was inoperable. The issue was whether the inoperable weapon was a firearm as that term is used in the MCM. The issue was not whether the weapon was a dangerous weapon as that term is used in Article 128(b)(1). The *Henry* case is not inconsistent with the *Price* rule. It is, however, inapplicable to the appellant's case.

As with their inappropriate use of *Booker, Palmer, Henry,* and *McLaughlin,* the majority's reliance on *United States v. Smith,* 15 C.M.R. 41, 1954 WL 2250 (1954), is misguided. If anything, *Smith* stands for the proposition the majority seeks to repudiate, that the *Price* rule is alive and well and accepted by our superior Court.

Smith was convicted of assault with a dangerous weapon, a knife with a 5-inch blade. During a confrontation, Smith pulled his knife, brandished it, then began chasing his victim. Smith never got closer than about 10 yards from his victim and pursued him for only a few yards. The victim, however, was placed in fear for his safety. The members found Smith guilty of assault with a dangerous weapon under Article 128(b)(1). On review, Smith presented the issue of whether a conviction for any assault, aggravated or simple, was precluded because of the distance between him and the victim. *Smith* 15 C.M.R. at 43.

The majority contends that the *Smith* Court referred to the MCM explanation of the term "dangerous weapon" for Article 128(b)(1) violations. The majority concludes that our superior court improperly gave the weight of law to the President's words. That simply is not the case. We have no quarrel with the proposition espoused by *United States v. Mance,* 26 M.J. 244, 252 (C.M.A. 1988), *United States v. Gonzalez,* 42 M.J. 469, 474 (1995) and similar cases holding that the President's or the drafter's explanations of UCMJ violations contained in the MCM are important but not binding on an appellate court, at least with respect to offenses other than Articles 133 and 134, 10 U.S.C. §§ 933–934, respectively. But, again, the majority misses the point. The particular MCM explanation of what a dangerous weapon is with respect to Article 128(b)(1) was recognized by the *Smith* Court for what it was, a correct restatement of the law, including the *Price* rule, as adopted by Congress in 1950 when it enacted Article 128(b)(1). There is a difference between the President improperly establishing an element of an offense and the President merely correctly stating what Congress or the appellate courts have established as the law. The majority would have us give no weight to such Manual provisions. That would be a mistake.

The *Smith* Court indicates wholehearted agreement with the military principle of law that an unloaded pistol, when presented as a firearm is not a dangerous weapon because under no conceivable circumstances is it likely to produce death or great bodily harm. *Smith,* 15 C.M.R. at 47. That, of course, is a restatement of the *Price* rule.

Apparently ignored by the majority is the express indication by the *Smith* Court that the law involving assault with an unloaded pistol is "wholly inapplicable" to a case in which the weapon of choice is a knife. *Smith,* 15 C.M.R. at 46. For reasons unrelated to the issue in the appellant's case, that Court then concluded that the trial court was not wrong as a matter of law in finding Smith guilty of the aggravated assault with the knife.

Just as the *Smith* Court correctly recognized that the principles of law regarding aggravated assault with a firearm cannot be logically applied to knife assault cases, the reverse should be just as apparent, that the rationale for a decision in a knife assault case is inapplicable to firearm cases.

Intermediate appellate courts such as ours have no choice but to follow the law, distinguish a case if not applying the law, or follow the law with a recommendation that the law be changed. The law is clear in this case. The *Price* rule applies to military practice today as it has for many decades. The appellant's case cannot be distinguished from

the many that have preceded it. We see no need for a change to Article 128(b)(1), provided the proposed Executive Order is implemented.

We would therefore set aside the guilty finding for aggravated assault and affirm a guilty finding for the lesser-included offense simple assault consummated by a battery in accordance with the established rule of law in the military, affirm the remaining findings, and reassess the sentence.

DOMBROSKI, Chief Judge, dissenting:

I concur in Judge Lucas' dissenting opinion.

I am convinced that Article 128(b)(1) of the UNIFORM CODE OF MILITARY JUSTICE presently incorporates the *Price* rule. Further, MCM, Part IV, ¶ 54c(4)(a)(ii), to the effect that an unloaded pistol presented as a firearm is not a dangerous weapon for purposes of this assault statute, is an accurate statement of a long-standing legal principle under the UCMJ.

This Court reviews far too many cases, and from my perspective an increasing number of cases, wherein firearms are used in the commission of other crimes. It is time for the UCMJ and the Manual to recognize that firearm use (appropriately defined) in the commission of other offenses, whether the firearm be loaded or unloaded, seriously aggravates the criminal misconduct and warrants increased punishment. I would urge quick adoption of appropriate changes to the Code and the Manual.

McLAUGHLIN, Senior Judge, dissenting:

I concur in the dissenting opinion, sharing Judge Lucas' observations and result.

But, even if the majority is correct on the law regarding the status of an unloaded pistol under Article 128(b)(1), what is clear to me is that the language of MCM, Part IV, ¶ 54, reflects the President's decision, exercising his recognized powers under Article 36, UCMJ, 10 U.S.C. § 836, to limit the punishment for assault with an unloaded pistol to confinement for 6 months, total forfeitures, and reduction to pay grade E–1, and a bad-conduct discharge. Even if this was done based on an incorrect interpretation of the substantive offense as passed by Congress, it is the President's order and we need obey it until it changes. *See United States v. Stanford*, 37 M.J. 388, 391 (C.M.A.1993) (holding that appellate court decisions should not encourage deliberate or negligent disregard of presidential rule-making under Article 36, UCMJ).

Because of the wide disparity between what I believe to be the authorized punishment for the offenses of which the appellant was found guilty and the punishment the military judge thought was available, even if the judge was correct in the law, the judge erred in determining the maximum authorized punishment, and I would set aside the sentence and authorize a rehearing on sentence.